William D. BLUE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18401.

United States Court of Appeals
District of Columbia Circuit.

Argued May 18, 1964.

Decided Oct. 29, 1964.

Certiorari Denied March 15, 1965.
See 85 S.Ct. 1029.

Bazelon, Chief Judge, concurred in part and dissented in part.

Mr. Carroll J. Savage (appointed by this court), Washington, D. C., for appellant.

Mr. John A. Terry, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BASTIAN and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

The principal question presented by this appeal relates to the adequacy of the pre-trial proceedings held before the United States Commissioner.[1] Because of an asserted defect in this regard, we are asked to direct the dismissal of the indictment.

## I

At the time of his arrest, appellant was a juvenile, seventeen years of age, with an educational experience terminating in the seventh grade. As required by law because of his age, he was first placed in the custody of the Juvenile Court, but that tribunal a few days later elected to waive its jurisdiction over him. The same day a complaint was filed with the Commissioner, and appellant was brought before him.

Rule 5 of the Federal Rules of Criminal Procedure, which is applicable to all U. S. Commissioners within and without the District of Columbia, specifies certain procedures to be followed in an appearance of this kind. Paragraph (b) of that Rule is as follows:

"*Statement by the Commissioner.* The commissioner shall inform the defendant of the complaint against him, of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and

---

1. Convicted both of robbery and of assault with a dangerous weapon, appellant also seeks reversal for re-trial on the grounds that (1) certain real evidence was improperly admitted, and (2) evidence of a foot clad in a tennis shoe was not adequate to support the dangerous weapon element of the assault conviction. We do not regard either contention, in the factual setting disclosed by this record, as justifying reversal.

that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules."

The record before us shows that the Commissioner here may be deemed to have complied with these directions. The proof in this respect is that the printed record form used by the Commissioner bears what appears to be a mechanical imprint with this legend:

"Complaint prepared. Defendant was informed of the complaint and of his right to have a preliminary hearing and to retain counsel. Defendant was not required to make a statement and was advised that any statement made by him may be used against him. Defendant was advised of his right to cross-examine witnesses against him and to introduce evidence in his own behalf."

Below this there is a typewritten statement that "Deft. Waived Preliminary Hearing."

This last recital of appellant's waiver of preliminary hearing derives from paragraph (c) of Rule 5 which provides in substance that, unless hearing is waived, the Commissioner is to hear the evidence against the defendant, with the latter having the right to cross-examine witnesses and to offer evidence of his own. Thereafter, the Commissioner is to determine whether the defendant is to be released or to be held to respond in the district court, depending upon wheth-

er he finds probable cause to believe the defendant committed the crime charged.[2]

The record here having recited a waiver of such hearing by appellant, he was bound over and subsequently indicted. After the indictment was returned, counsel was appointed by the District Court to represent appellant in the trial which resulted in the convictions now on appeal.

## II

■■■ As the tribunal vested with the penultimate authority and responsibility for the supervision of criminal justice in the District of Columbia, our mandate comprehends alertness to see that the directions of Congress are complied with. Rule 5 is such a direction which, as noted above, is as binding upon the U. S. Commissioner in this jurisdiction as it is upon his counterparts in Alaska or Alabama. But, unlike his confreres outside the District, the Commissioner here is subject to additional instruction from Congress in the matter of the provision of counsel for indigents in preliminary hearings in felony cases. Thus, even if it be assumed that, on this record, the proceedings before the Commissioner were in literal compliance with Rule 5, our inquiry is not at an end for the reason that that Rule does not exhaust the responsibilities of a U. S. Commissioner sitting in the District of Columbia.

In 1960 Congress enacted the District of Columbia Legal Aid Act, 2 D.C.Code §§ 2201–2210. Its purpose was clearly reflected in its very first section which recited that the Legal Aid Agency thereby created was "to provide legal rep-

2. Paragraph (c) of Rule 5 in its entirety reads as follows:

"*Preliminary Examination.* The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the commissioner shall forthwith hold him to answer in the district court. If the defendant does not waive examination, the commissioner shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him. The commissioner shall admit the defendant to bail as provided in these rules. After concluding the proceeding the commissioner shall transmit forthwith to the clerk of the district court all papers in the proceeding and any bail taken by him."

resentation of indigents in judicial proceedings in the District of Columbia, as provided in section 2–2202." Section 2–2202 is equally clear as to the nature of the judicial proceedings which Congress had in mind. The full text of that section, because of its critical importance in the resolution of the issue before us, is set forth in the margin.[3] We observe only that it sets forth two explicit obligations: one is that of the Agency to make attorneys available in preliminary hearings in felony cases, including those before the Commissioner; and the second is that of each court and tribunal, which in the context clearly includes the Commissioner, "to provide assignment of counsel as early in the proceeding as practicable."

3. "§ 2–2202. *Counsel for indigents to be provided in criminal proceedings and proceedings of a criminal nature.*

"The Agency shall make attorneys available to represent indigents in criminal proceedings in the United States District Court for the District of Columbia and in preliminary hearings in felony cases, and in cases involving offenses against the United States in which imprisonment may be for one year or more in the Municipal Court for the District of Columbia, in proceedings before the Coroner for the District of Columbia and the United States Commissioner, in proceedings before the juvenile court of the District of Columbia, and in proceedings before the Commission on Mental Health of the District of Columbia and proceedings in the courts arising therefrom.

"The Agency shall from time to time advise each of the courts and tribunals named in this section of the names of the attorneys employed by the Agency who are available to accept assignments in said court or tribunal. The judges or other presiding officers of the several courts and tribunals may assign attorneys employed by the Agency to represent indigents, such assignments to be upon a case-to-case basis, a group-of-cases basis, or a time basis, as the assigning authority may prescribe. Each such court and tribunal will make every reasonable effort to provide assignment of counsel as early in the proceeding as practicable."

It seems to us that this language cannot be read—at least with anything like a due regard for the fair intendment of Congress—as limiting the Commissioner's responsibilities in a case like the one before us to a routine notification under Rule 5 that appellant may retain his own counsel.[4] Neither do we understand that the Commissioner himself regards his responsibilities as so limited when the defendant before him raises the issue of the protections provided by Congress in the 1960 statute. On June 1, 1964, as it is commanded to do in the law creating it, the Board of Trustees of the Legal Aid Agency submitted its report of operations for the immediately preceding year. Because of its relevance to the matter at hand, the section of that report relating to the U. S. Commissioner is printed in the margin in full.[5]

4. It may be urged that, because Section 2202 says that the tribunals "may" assign Agency attorneys to represent indigents, there is no requirement that they must. But the precise issued raised on this record is not whether the statute requires appointment under any and all circumstances. It is, rather, whether the express provision which Congress has made for the availability of Agency attorneys in the District of Columbia disables the Commissioner from contenting himself simply with a formal notification to the prisoner under Rule 5 that he has a right to hire a lawyer for himself. If a prisoner, once informed, chooses freely and intelligently to refuse the representation Congress has provided, of course no appointment must be made; and there may conceivably be other special circumstances warranting the omission of appointment. Indeed, a statute making appointment mandatory in all cases might present, upon the prisoner's challenge, a serious constitutional problem, as witness Judge Medina's recent opinion in United States v. Plattner, 330 F.2d 271 (2d Cir. 1964).

5. "The Legal Aid Act provides: 'Each such court and tribunal will make every reasonable effort to provide assignment of counsel as early in the proceeding as practicable.' The Act also provides that the Agency shall make attorneys available to represent indigents in proceedings before the United States Commissioner. During the past year, 1,183 cases were docketed on the docket of the United States Commissioner for the District of

The question it immediately raises is: Why did attorneys appear for indigents in such a small percentage of hearings before the Commissioner when the other figures suggest that a much higher proportion of them were in fact indigent, as indicated by their eventual provision with counsel after indictment? And how did it happen that 197 out of a much larger number of indigents, had counsel assigned to them in the Commissioner's proceedings and the others did not?

It may fairly be inferred, we think, both from what is said in the Board's report and from what appears in the record in this case, that the answer lies in an assumption by the Commissioner that he is not called upon to do more than to inform the defendants before him of the matters specified in Rule 5. Unless the defendant before him takes the initiative to assert his indigency and to seek actively the provision of counsel under the 1960 statute, the matter silently goes by default, an uncounselled waiver of preliminary hearing is ordinarily made, and the proceedings before the Commissioner are at an end. Contrarily, the defendant who himself raises the issue of the availability of unpaid counsel apparently becomes one of those who, like the 197 last year, have the benefit of counsel at the preliminary hearing and who, if they choose to waive the receipt of evidence and the making of a finding as to probable cause, at least do so after legal instruction and advice.

We need not pause, however, to speculate about what the Commissioner has been doing generally. Our problem is to determine whether he functioned properly as an instrument of the will of Congress in this particular case. We think he did not; and our conclusion rests upon what we conceive to be the letter, as it is certainly the spirit, of the 1960 statute. We find in it a clear and explicit prescription for the District of Columbia, as unique perhaps as the District is unique in the lead which it, thanks in large part to an enlightened bar which has shouldered a truly professional responsibility of staggering scope, has attained over other jurisdictions in the quest of one of the ideals of a free society—equal justice for all. And, given the Legal Aid Act, we also need not speculate, at least in order to decide the case before us, as to what the Constitution demands of criminal procedure as administered in Hawaii, or whether Rules 5 and 44 of the Federal Rules of Criminal Procedure should be interpreted to mean now what they will clearly mean if the proposed amendments

Columbia. These were all preliminary hearings in felony cases. Assignments of the Legal Aid Agency staff attorneys were made in 197 cases. It will be observed that the assigned cases constituted only 17% of all the docketed cases, whereas approximately 60% of indicted defendants have attorneys assigned to represent them in trial in District Court. From this it can be calculated that a substantial number of indigents appearing before the Commissioner went without counsel. The Commissioner, following the wording of Rule 5(c) of the Federal Rules of Criminal Procedure, informs the arrested person appearing before him that he has a right to retain counsel. Recent court opinions would seem to indicate that an indigent brought before the Commissioner is entitled to assigned counsel at the preliminary hearing before him. The Advisory Committee on the Federal Rules of Criminal Procedure has recommended that Rule 5(c) be amended to require the Commissioner to advise the accused indigent of his right to assigned counsel. In the event of a substantial increase in preliminary hearings before the Commissioner, more attorneys will have to be provided by the Agency, by the Prettyman Fellows of Georgetown University Law Center or by volunteer attorneys, or by all combined.

A staff attorney of the Agency assigned to represent a defendant in a preliminary hearing before the United States Commissioner considers himself still his attorney after the hearing, and to the extent possible begins before indictment to prepare for trial. Experience to date indicates that prompt investigation contributes to the correct and speedy disposition of criminal cases."

BOARD OF TRUSTEES OF THE LEGAL AID AGENCY FOR THE DISTRICT OF COLUMBIA, FOURTH ANNUAL REPORT 10-11 (1964).

to them presently in circulation become effective next year.[6]

We do not believe that the 1960 statute reflects any assumption by Congress that its benefits were to be available to a seventeen-year old boy with a seventh grade education only if he affirmatively raised the question and requested them. There is nothing in this record which remotely suggests that he was apprised of these benefits, and, indeed, the short-hand formalism of the papers recording the appearance before the Commissioner raises a strong inference to the contrary. These pre-trial proceedings, thus, do not seem to us to have measured up to the standard fixed by the Congress in the 1960 statute; and we regard the uncounselled status of this appellant when he waived preliminary hearing as infecting that waiver.

### III

█ The Government suggests to us that, even if the pre-trial proceedings before the Commissioner in this case were inadequate, the subsequent return of an indictment cured any inadequacy. We do not believe, however, that the mere existence of an indictment renders academic any defects in the Commissioner's proceedings or necessarily insulates those defects from judicial correction. Such a proposition is, we believe, incompatible with the importance which Congress, in this jurisdiction at any rate, has attached to these preliminary proceedings and to the participation of counsel in them. If that body had thought that disregard of its efforts to provide counsel in preliminary hearings in the 1960 statute could be absolved by the return of an indictment, there would seem to have been little point in its taking the trouble to address itself directly to the provision of counsel in preliminary hearings in felony cases.

We think, on the contrary, that the express preoccupation of Congress with preliminary hearings in the Legal Aid Act denotes a legislative recognition and acceptance of the view that criminal prosecution is a continuous and unitary process, and that each stage along the way has its own intrinsic importance as well as a frequently significant relationship to the final result. Preliminary inquiries can on occasion have great value for one charged with crime. Where a defendant is denied out of hand the opportunity to consider utilizing that value, we do not think that that denial is to be swept under the rug of a grand jury indictment. Neither do we think that the availability of a remedy should depend upon the outcome of a race between counsel seeking habeas corpus or mandamus and the grand jury acting upon the

---

6. See SECOND PRELIMINARY DRAFT OF PROPOSED AMENDMENTS TO RULES OF CRIMINAL PROCEDURE FOR THE UNITED STATES DISTRICT COURTS, March 1964. These amendments, prepared by the Advisory Committee on Criminal Rules appointed by the Chief Justice of the United States under the rules-study program of the Judicial Conference of the United States, propose the addition to Rule 5(b) of the requirement that the Commissioner shall inform the defendant not only of his right to retain counsel, as presently, but also "of his right to request the assignment of counsel if he is unable to obtain counsel." Rule 44 is revised to read as follows:

"RULE 44. RIGHT TO AND ASSIGNMENT OF COUNSEL

(a) Right to Assigned Counsel. Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the commissioner or the court through appeal, unless he waives such appointment.

(b) Assignment Procedure. The procedures for implementing the right set out in subdivision (a) shall be those provided by law or by local rules of district courts or courts of appeals."

The *Second Preliminary Draft* has been widely distributed to bench and bar, with a request that comments be forthcoming not later than April 1, 1965. It may or may not be significant, as a presage of eventual adoption, that the proposals of immediate interest to us were only strengthened in the *Second Draft* as compared with the *First*, which latter itself was outstanding for comment for a considerable period of time.

charge. We, therefore, conclude that relief in such a situation is not to be foreclosed solely by reason of an intervening indictment.

■ There are, it appears to us, three possible avenues of remedial action open for the redress of infirmities in preliminary proceedings. One, of course, is the dismissal of the indictment, which, as noted above, is the alternative pressed upon us in this case. The argument is that only in this way can a prosecution be assured which is free of defects in all its stages. Wiping the slate clean is always a tidily appealing solution, but we are not convinced that it is necessary to go so far, either generally or in this case.

A second remedy would be to reverse the conviction and remand for a new trial. As a sanction providing a potent deterrent to disregard of pre-trial requirements, there can be little question of the efficacy of this approach, although the weight of the blow would fall, in the first instance at any rate, upon those not responsible for the error. On the remedial level as well there is something to be said for it, inasmuch as it would inevitably operate to convert the first trial into a rough equivalent of the defective or omitted preliminary hearing. However, it would provide no incentive to defendants to seek pre-trial resolution and cure of claims of defects in pre-trial proceedings. It would be most wasteful indeed if a visible flaw in the early stages of the criminal process were not asserted, adjudicated, and, if necessary, corrected before a full-scale trial takes place. Justice to an accused does not require that he be permitted to visit this

consequence of his own dilatoriness upon the offending system.

■ It is, therefore, the third alternative of intervention by habeas corpus or mandamus prior to trial that we conceive to be the remedy best calculated to combine adequate relief to accused persons with the least burden to the Government and the courts. Thus, an accused who is permitted to waive hearing without proper advice or who is wrongfully denied an opportunity to present witnesses in his own behalf will be entitled to an order of release unless a hearing is held, or to an order reopening the hearing for presentation of further evidence.[7] With such opportunities available for relief before trial despite intervening indictment, there will, of course, be a corresponding obligation to make a timely assertion of the alleged defects or, in default thereof, be thereafter foreclosed from reliance upon them as invalidating the conviction. Every counsel who enters a criminal case will presumably review the preliminary proceedings and determine whether or not a defect of substance has occurred. With counsel appearing either at the preliminary hearing stage itself, or, at the latest, before arraignment upon the indictment, there is normally adequate time before trial to file the necessary petitions if they are called for. Naturally, an attorney will be entitled, upon consultation with his client, to decide that a minor flaw is not worth challenging, or that, as a tactical matter, it is to the defendant's advantage to forego the point. Thus, unless some reason is shown why counsel could not have discovered and challenged the defect before

7. These remedies should, of course, be asserted at the earliest possible moment. Where, however, indictment occurs before it is feasible for assertion or resolution of the claim to have been made, relief is not to be denied for that reason alone. In a preliminary hearing held or reopened after indictment, the Commissioner would continue under the necessity of making his own independent determination of probable cause. If he were persuaded that no such cause existed, that finding would result in his release of

the defendant. It would not affect the indictment, although the Commissioner's action would presumably cause the prosecutor to review the indictment again with care. The defendant could be made to respond to the indictment by summons, or a resumption of custody could be sought by application for a bench warrant. In the latter case, such a singular circumstance as a finding of no probable cause by the Commissioner would presumably be a factor for consideration by the court.

trial, it will generally be assumed that any objections to the preliminary proceedings were considered and waived, and no post-conviction remedies will be available.

## IV

There remains the question of what to do in the present case. It has generally been thought that the purpose of a preliminary hearing is to afford the accused (1) an opportunity to establish that there is no probable cause for his continued detention and thereby to regain his liberty and, possibly, escape prosecution, and (2) a chance to learn in advance of trial the foundations of the charge and the evidence that will comprise the government's case against him.[8]

As we have said, we do not feel that there is any necessity to do what appellant asks us to do, namely, reverse his conviction with directions to dismiss the indictment. In light of the generally recognized purposes of a preliminary hearing, it is not without significance that he has couched his prayer for relief here in these terms, rather than urging upon us that the Commissioner's error so impaired his ability to defend himself at his first trial that another should be granted for that reason alone. For this is the precise issue we face in considering whether some relief short of dismissal of the indictment should be ordered.

Appellant's appointed counsel entered the case three days after the indictment was filed. There was, therefore, time for him to have sought pre-trial relief from the Commissioner's earlier error. We are not, however, inclined to hold him (see United States v. Stevenson, 170 F. Supp. 315 (D.D.C.1959)) to as rigorous a standard of timely action as we contemplate for cases arising in the future. Nevertheless, in weighing the problem immediately before us, we cannot be unmindful that counsel apparently did not see any compelling necessity to seek pre-

trial relief in order to prepare for trial. Nor, at the trial itself, did he make any intimation, by formal objection or otherwise, that appellant was being unfairly exposed to, or surprised by, the introduction of evidence that he could have successfully rebutted had he had a pre-trial hearing. And no more than in the trial court have claims of this nature been advanced on this appeal. Moreover, our own examination of the record discloses no basis for any such allegations. Accordingly, we cannot find that the Commissioner's failure to accord appellant a meaningful opportunity to elect to have a preliminary hearing, and thereby to acquaint himself in greater detail with the case against him, so handicapped him in his first trial as to require a second.

The other main purpose of a preliminary hearing, as we have noted, is to afford the accused a chance to secure his immediate release by persuading the Commissioner that there is no probable cause to hold him on the charges in question. Where, as here, the accused has been found guilty of those charges in a full-scale trial that we have otherwise found to be free of error, the chances that he could persuade a magistrate that no probable cause exists for his continued detention are perhaps not ungenerously to be characterized as speculative.

Accordingly, the convictions appealed from are

Affirmed.

BAZELON, Chief Judge (concurring in part and dissenting in part):

I concur in Parts, I, II, and III of the court's opinion. I dissent from Part IV. I do not think we should decide, without remanding for further inquiry, that the denial of appellant's right to a preliminary hearing did not prejudice his defense. The court cites, as grounds for concluding that appellant was not prejudiced, the facts that appellant's

8. ORFIELD, CRIMINAL PROCEDURE FROM ARREST TO APPEAL 72–75 (1947); PUTTKAMMER, ADMINISTRATION OF CRIMINAL LAW 91–95 (1953); Miller, *The Preliminary Hearing*, 15 A.B.A.J. 414–15 (1929).

counsel did not object at trial to the absence of preliminary hearing and that counsel did not argue in this court that appellant was prejudiced by that absence. But, as the court acknowledges, counsel could reasonably believe that under then-prevailing case law such objection would be futile. Hence his failure to object was excusable. And in raising the objection for the first time in this court, counsel understandably did not argue that appellant was prejudiced by the absence of a preliminary hearing, because this was a question of fact or mixed law and fact which an appellate tribunal could not resolve without the benefit of findings from the District Court.

Were this court to affirm the conviction on a finding not considered below, the defendant would in effect be deprived of [the] right [of appeal], for our finding, in the first instance, on the main issue, would be subject to review only on the grant of certiorari by the Supreme Court. [Quinn v. United States, 91 U.S.App.D.C. 344, 349, 203 F.2d 20, 25 (1952) (*en banc*), reversed on other grounds, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964 (1955).]