Ernest H. **HOLMES**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19519.

United States Court of Appeals
District of Columbia Circuit.

Argued March 11, 1966.

Decided July 21, 1966.

Petition for Rehearing En Banc Denied
Oct. 13, 1966.

Mr. Theodore Sky, Washington, D. C., with whom Mr. Gerald G. Schulsinger, Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Charles A. Mays, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., and John Wall, Atty., Dept. of Justice, were on the brief, for appellee.

Before FAHY, DANAHER and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

Appellant was convicted on both counts of an indictment charging housebreaking [1] and grand larceny.[2] The only error urged on appeal which gives us some concern is an allegation that appellant was effectively denied a preliminary hearing pursuant to Rule 5, FED.R.CRIM.P., and that he was prejudiced by this denial.

Prior to trial, appellant filed in the District Court a "Motion to Dismiss Indictment or for Alternative Relief," invoking the doctrine expounded in Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), *cert. denied,* 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964

1. 22 D.C.CODE § 1801 (1961).

2. 22 D.C.CODE § 2201 (1961).

(1965), and alleging that: "Defendant has no recollection of having an attorney representing him at the preliminary proceedings on September 10, 1964; he does not remember ever talking to an attorney by the name of Brownlow; and he does not recollect having agreed to or consented to a waiver of the preliminary hearing." Appellant also alleged in his motion that Brownlow "is not listed in the classified or regular telephone directory as a lawyer practicing in the District of Columbia; he is not listed in The Legal Register as a lawyer maintaining an office or telephone in the District of Columbia; and he did not file a report under Criminal Rule 24(4)[3] of the General Sessions Court of the District of Columbia showing representation of any of the defendants at the preliminary proceedings on September 10, 1964."

The records of the District of Columbia Court of General Sessions[4] show that a complaint charging appellant and two others with breaking and entering on September 10, 1964, was filed, and a warrant issued for his arrest. The records of that court further show that appellant waived preliminary hearing and was held for the grand jury on failure to make a $2,000.00 bond. The same records indicate the appointment of "Atty: H. Brownlow" as counsel for the three defendants, including appellant, charged in the complaint. The record also lists three witnesses.

Appellant was subsequently indicted and, some time before trial on December 4, 1964, filed the motion described in detail above, asking that the indictment be dismissed as to him or, "alternatively, to order a preliminary hearing for him in full accordance with Rule 5 of the Federal Rules of Criminal Procedure * * *." Appellant's motion was denied without an evidentiary hearing of any kind.

■ ■ We think an evidentiary hearing should have been conducted to determine whether the allegations in appellant's motion[5] were well founded. If the allegations are true, obviously appellant was effectively denied not only counsel for his preliminary hearing, but the preliminary hearing itself. In Blue v. United States, *supra*, and in Dancy v. United States, 124 U.S.App.D.C. ——, 361 F.2d 75 (decided October 14, 1965, modified February 11, 1966), we have made it very clear that an effective preliminary hearing is one of the important rights of a defendant charged with crime —that such a hearing gives a defendant "a chance to learn in advance of trial the foundations of the charge and the evidence that will comprise the government's case against him." Blue v. United States, *supra*, 119 U.S.App.D.C. at 322, 342 F.2d at 901.

■ The Government argues that appellant's reliance on *Blue* and *Dancy* is misplaced since the records in those cases show that the accused was not represented by counsel at the preliminary hearing. Here the record, such as it is, does show that an attorney, "H. Brown-

---

3. Rule 24(4) (A) reads:
    "Every attorney receiving a referral or assignment to represent a defendant in United States Branch of Municipal court [now D. C. Court of General Sessions] shall within three days after disposition of the case by the court file a report with the court on a form prescribed by the court, setting forth the name of the defendant, the offense charged, the date of referral or assignment, the disposition of the case (including date, and whether by plea, trial or otherwise), the nature of the fee arrangement, if any, and the total compensation received, or to be received, if any."

4. The Court of General Sessions, along with the United States Commissioner, acts as a committing magistrate under Rule 5, FED.R.CRIM.P., for offenses cognizable in the United States District Court in the District of Columbia. 11 D.C.CODE § 755a (1961).

5. Appellant's motion was in substantial compliance with the procedure suggested in *Blue*. See 119 U.S.App.D.C. at 321, 342 F.2d at 900. It specifically relied on *Blue*. The fact that it was filed like a § 2255 motion (28 U.S.C. § 2255) in the criminal proceeding itself, rather than as a separate *habeas corpus* proceeding, should not preclude relief.

low," represented the appellant, but the first issue presented is whether the record notation of counsel for appellant is accurate. In the motion papers appellant alleges that he has no recollection of any such lawyer, and appellant's trial counsel, after diligent search, was unable to find him. The second issue presented is, assuming "H. Brownlow" was appointed appellant's lawyer by the committing magistrate, did he actually represent appellant? If the committing magistrate appointed an incompetent lawyer to represent appellant, or if the lawyer appointed for some reason failed to function, then appellant has, in effect, been denied rights guaranteed him by two Acts of Congress [6] and by the decisions of this court in *Blue* and *Dancy*. Moreover, where the right to counsel exists, failure of the court "to make an effective appointment of counsel was likewise a denial of due process * * *." Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Compare Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, *cert. denied*, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958).

Under the circumstances, we believe it would be appropriate, while retaining jurisdiction in this case, to remand it to the District Court for an evidentiary hearing on appellant's "Motion to Dismiss Indictment or for Alternative Relief" so that the true facts with reference to the preliminary proceedings in this case may be developed. If the trial court finds that appellant was effectively denied a preliminary hearing under Rule 5, FED.R.CRIM.P., and that appellant was prejudiced [7] by that denial, his conviction should be set aside and a new trial granted. Otherwise the conviction will stand.

Remanded with instructions.

---

6. 2 D.C.CODE § 2202 (1961) and 18 U.S.C. § 3006A (1964).

7. The appropriate test for prejudice in a similar situation is set out in Anderson v. United States, 122 U.S.App.D.C. 277, 352 F.2d 945 (1965), and cases there cited.

DANAHER, Circuit Judge (dissenting).

To put this case in proper perspective, it may be in order to submit a recital of the facts, overwhelmingly established at trial.

About 3:30 A.M. on September 10, 1964, two officers in a radio cruiser were informed by a police broadcast that a housebreaking was in progress at a small grocery store in southeast Washington. In less than two minutes the officers arrived in front of the store at 4403 Bowen Road, S.E. Officer Davis guarded the front door, the glass on which had been broken. Officer Connor immediately went around to the rear. Within a matter of seconds, three men came out of the back door of the grocery. One was Swearinger,[1] and with him were this appellant and his co-defendant Sistare. One of the men was carrying a basket filled with cartons of cigarettes.

Upon seeing the officer the three men broke into a run, Swearinger and Sistare seeking concealment behind a nearby truck. Connor drew his service pistol and ordered them to come out with their hands up. Officer Connor maintained control over Swearinger and Sistare, and caused them to lie on the ground.

Holmes ran around the corner toward the front of the store. Officer Davis, hearing Connor's call, moved in that direction and with revolver in hand, ordered Holmes to stop. Officer Davis searched Holmes and brought him back to the rear of the store where he was caused to lie down with his confederates.

Backed up against the rear of the store was a car which belonged to Swearinger. The trunk was open. In the trunk were yet other cartons of cigarettes in a basket and an adding machine.[2]

---

1. Who entered a plea of guilty to the housebreaking count and did not go to trial.

2. Later, at the precinct, the store proprietor, Lewis Gordon, identified as his property the cartons of cigarettes and adding machine.

Following a police radio call, other officers presently arrived and took charge of the prisoners Swearinger, Sistare and Holmes.

The proprietor was brought to the store. He unlocked the front door. Just inside the broken window was a large stone. Various items had been pulled out from the counter near the front of the store. Gordon noticed that his portable television set was missing, but as examination of the premises continued, the set was located just inside the rear door.

The police radio lookout system was so effective, and the response by Officers Connor and Davis was so prompt, the three culprits were all but apprehended within the store.

Sistare at trial testified that he and Swearinger and Holmes had been in Swearinger's car since about five in the afternoon of September 9th. He went to sleep out near the grocery store, awoke to discover that he was all alone, and, he said, for a personal reason he went between two trucks. It was then that an officer called to him, put a pistol in his face and told him to lie on the ground. That was Officer Connor, he testified, even as he denied having entered the Gordon store.

Holmes testified that he and Sistare the previous afternoon had met Swearinger at Holmes's house, and thereafter they rode around in Swearinger's car looking for Holmes's girl. Throughout the night he was here or there, he said, as the three were driving around until he began to feel ill. He then got out of Swearinger's car, and he added that Swearinger and Sistare drove off without him.[3] He found himself on Bowen Road,[4] only to be accosted by Officer Davis who took him "back down there" where there was "another man standing over top of Swearinger and Sistare, with a gun in his hand."

Finding the Holmes testimony at variance from the opening statement made by his trial attorney, the latter in the absence of the jury addressed the court:

"For the purposes of the record, Your Honor, about half of what the defendant said on the stand was a complete surprise to me."

He added that in the course of "numerous interviews" the appellant had "consistently told me" a different story. The attorney asked Holmes no further questions.

From the foregoing, some idea can be gleaned as to why I do not join my colleagues in thinking there even possibly could have been "prejudice." I see no error whatever on this record to justify another hearing, taking further judicial time from a District Court with a backlog of some 500 criminal cases awaiting trial.

But let us turn back now to earlier events Mr. Gordon, the store owner, on September 10, 1964, had sworn out a complaint against Swearinger, Holmes and Sistare. The record of the Court of General Sessions clearly shows that an attorney had been appointed to represent the three accused when they were presented and that preliminary hearing had been waived. Judge Neilson held the three to await grand jury action and set bond for their appearance. On the back of the complaint under date of September 10, 1964, the clerk of court had used a rubber stamp which read:

"Defendant informed of:

"1. Within complaint

"2. Right to retain counsel

"3. Right to preliminary examination

"4. Defendant is not required to make statement

"5. Any statement made by defendant may be used against him"

Following the indictment and arraignment of Holmes, Attorney Kelley E. Griffith on October 26, 1964 was appointed

---

3. By sheerest coincidence, obviously, the three were once again united in Gordon's store.

4. Surely the jury will be excused for refusing to believe such testimony.

to represent the appellant. On November 20, 1964, pursuant to counsel's motion Holmes was committed to St. Elizabeths for 60 days for examination and report.[5] Attorney Griffith next, on December 4, 1964, filed a document entitled "Motion to dismiss indictment or for alternative relief."

The moving papers were not supported by the affidavit of counsel. There was no statement under oath by Holmes for which *he* might be held accountable. That motion was heard and denied on February 12, 1965.[6] It is that ruling to which my colleagues have addressed themselves. In my view, there was no error.

The District Judge could have seen at a glance that this case is not governed by Blue v. United States, 119 U.S.App. D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029 (1965), or by Dancy v. United States, 124 U.S. App.D.C. 58, 361 F.2d 75 (Oct. 14, 1965, as modified Feb. 11, 1966). In those cases it will be noticed that the accused had *no* attorney as of the times deemed critical by the court. To the extent that Attorney Griffith sought to impeach the official record of the Court of General Sessions, the District Judge had before him only unsupported allegations of rank hearsay. Certainly he knew it to be fundamental that every presumption of validity had attached to the court record that counsel had been appointed and a hearing had been waived.

Otherwise, the motion merely set forth conclusory and unsworn allegations that Holmes had no "recollection" of an attorney or that he could not recall having

agreed to waive preliminary hearing or that *Attorney Griffith* could not locate the attorney who had been appointed to represent the accused in the Court of General Sessions. I do not agree that official court records are subject to impeachment on that sort of proffer. I think the trial judge ruled correctly in denying the motion.

Attorney Griffith [7] then withdrew from the case which went to trial on May 12, 1965. Significantly, over the intervening many weeks his successor, *Attorney Martin,* took *no step whatever* to develop and present any claim for relief such as had been suggested in the *Blue* case. I see "no basis in the record for an informed speculation that the trial itself was in any way" prejudiced.[8]

Obviously, my view has not prevailed with my colleagues. I can do little more than record my dissent. But that "little more" includes this much: Let the District Judge before whom this hearing is to be conducted call this appellant to the witness stand and let him be put under oath. Let the record be caused to show the basis upon which the representations in the motion were made to the court. Let Attorney Griffith also be called upon to explain how the motion was so prepared. The District Court can do no less than make sure that its processes are not being abused.

Following remand as directed by the majority the District Court conducted an evidentiary hearing. The court found that the appellant had not been denied an effective preliminary hearing, had not been prejudiced, and this court on February 24, 1967, entered its judgment affirming the conviction.

---

5. The Superintendent of St. Elizabeths on January 25, 1965 certified that Holmes was competent to stand trial, was without mental disorder and the District Court on February 2, 1965 entered its order accordingly.

6. Attorney Griffith that same day was allowed to withdraw as counsel. On February 24, 1965, Attorney William B. Martin was appointed to succeed Griffith.

7. At one time or other the three accused had had no less than seven attorneys appointed, four of whom were later permitted to withdraw.

8. Cf. Shelton v. United States, 120 U.S. App.D.C. 65, 66, 343 F.2d 347, 348, *cert. denied,* 382 U.S. 856, 86 S.Ct. 108, 15 L.Ed.2d 93 (1965).