M. Marvin Berger, J.
This case deals with the need to hold a preliminary hearing, in cases in which a Grand Jury has heard testimony against a person accused of committing a felony, hut, instead of indicting, has directed the District Attorney to file a prosecutor’s information, charging the defendant with a misdemeanor.
Both defendants are charged with the misdemeanor of criminal mischief in the fourth degree (Penal Law, § 145.00). Cangiolosi is also accused of assault in the third degree (Penal Law, § 120.00).
The defendants were arrested on November 4, 1972 and accused of burglary, a felony, as well as criminal mischief and assault. They were accused of entering a dwelling occupied by Martin Casey, unlawfully remaining on the premises with intent to commit a crime, causing physical injury to Mr. Casey and Ellen Casey, and damaging the front door and porch window of the house.
The defendants were arraigned on November 5 and the matter was adjourned to November 8. On November 8, at the People’s request, the matter was adjourned to November 28. The court papers note that the matter was being presented to the Grand Jury. On November 10, pursuant to direction of the Grand Jury, Supreme Court Justice Frank O’Connor signed an order directing filing of prosecutors’ informations charging the defendants with the misdemeanors described above. The informations were filed.
*667 The defendants failed to appear on November 28 and their bail was ordered forfeited. On December 26, the forfeiture was remitted and the case put on the calendar of this court for January 18. On that day, defendants appeared and moved for a preliminary hearing. The People opposed the application and the court reserved decision on the defendants’ demand.
The defendants claim that the explicit wording of OPL 170.75 entitles them to a preliminary hearing.
OPL 170.75 states that a defendant who has been arraigned in the New York City Criminal Court upon an information, simplified traffic information, or prosecutor’s information, except for gambling offenses or violations of the Multiple Dwelling Law, may, before entry of a plea of guilty or commencement of a trial, request a hearing “to determine whether there is reasonable cause to believe that [the defendant] committed such misdemeanor.”
At the conclusion of the hearing the court must deny the defendant’s motion to dismiss the information if there is reasonable cause to believe that the defendant committed the misdemeanor .charged, or a lesser offense. Conversely, in the absence of reasonable cause, the court must dismiss the accusatory instrument and discharge the defendant.
Subdivision 3 of CPL 100.10 defines a prosecutor’s informa- ' tion as an accusation filed with a local criminal court at the direction of the District Attorney, charging commission of one or more offenses, none of which is a felony.
Defendant submits that because of the clear-cut statutory direction to the court, the court must order a hearing to be held.
If the question were as simple as suggested by the defense brief, the answer w;ould be correspondingly simple. But, as will be demonstrated, the question is rather more complex.
A preliminary examination has been described as “ a mere judicial inquiry to determine whether there is ‘ probable cause ’ for the accusation, the nature of which is thereby made known to the accused.” (21 Am. Jur. 2d, Criminal Law, § 443).
In New York, a prosecutor’s information may be filed by means other than by direction of a Grand Jury. If a hearing on a felony complaint fails to convince the local criminal court that there is reasonable cause to connect the defendant with the felony, but there is reasonable cause to believe that the defendant committed a nonfelonious offense, the court may order filing of a prosecutor’s information (CPL 100.10, 180.50, 180.70).
*668 Also the prosecutor may file an information at his own instance (CPL 100.10, 100.50).
In every case, except where'the prosecutor alone is the source of the information, there has been, at the very least, a finding of reasonable cause to believe that the defendant committed a nonfelonious offense.
But, in New York City where the Grand Jury directs the prosecutor to file an information, there has been a more rigorous examination of the case than the defendant is entitled to receive in a misdemeanor hearing authorized by CPL 170.75. For, CPL 190.70 authorizes the Grand Jury to order the filing of a prosecutor’s information against a defendant “ when (a) the evidence before it is legally sufficient to establish that such person committed such offense, and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.” (Emphasis added.) CPL 190.75 directs the Grand Jury to dismiss the charge where the evidence is legally insufficient to establish the commission of the crime charged or any other offense or where ‘‘ the grand jury is not satisfied that there is reasonable cause to believe that such person committed the crime charged or any other offense.”
Thus, the 'Grand Jury may not direct the filing of a prosecutor’s information, unless the evidence is both legally sufficient to establish the commission of a crime and gives rise to reasonable cause to believe that the defendant committed the crime.
Under CPL 70.10, ‘ ‘ ‘ legally sufficient evidence ’ means competent evidence, which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof”. Reasonable cause exists when apparently reliable evidence or information discloses facts or circumstances collectively of sufficient weight and persuasiveness to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that the defendant committed the offense. In short, the reasonable cause test is less exacting than the test of legal sufficiency. (People v. Scarposi, 69 Misc 2d 264.)
A defendant giving CPL 170.75 the literal reading argued for by defendant, might be justified in urging that even where a preliminary felony hearing has been held and he has been held by the court for Grand Jury action, he would be entitled to another hearing if the Grand Jury reduced the charge to a misdemeanor and ordered filing of a prosecutor’s information.
True, the defendants here do not go to such an extreme. Rather, in a supplementary memorandum they assert that the *669 misdemeanor hearing establishes the law of the case, and that absent new evidence, the Grand Jury cannot order the filing of a prosecutor’s information, covering a misdemeanor previously dismissed by the 'Criminal Court. Thus, no new hearing is required.
This court does not find it necessary to deal with the proposition, except to comment that contrary to defendants’ assertion, neither double jeopardy nor unconstitutional denial of equal protection would necessarily be involved in such a situation.
For the purpose of this decision, it is sufficient to say that the clear legislative intent appears to have been to afford a defendant the benefit of scrutiny of the charges either by the Criminal Court or by a Grand Jury, measured by the standard of reasonable cause or legal sufficiency respectively. Here, the defendants have had the benefit of such scrutiny by the Grand Jury of Queens County.
There are no cases interpreting CPL 170.75, which affords persons arrested in New York City and accused of misdemeanors, a privilege not extended to persons facing similar charges in any other court in New York — that of a preliminary hearing.
In an analogous situation, decided before the effective date of the Criminal Procedure Law (People v. Avalime, 63 Misc 2d 834 [Crim. Ct. of City of N. Y., N. Y. County], my learned colleague, Judge Arthur H. Goldberg, denied a defendant not in custody, the right to a preliminary hearing. There, the defendant had failed to demand trial by a three-Judge panel, a practice that was abandoned after the United States Supreme Court had required trial by jury on the defendant’s demand, where the penalty exceeded six months. (Baldwin v. New York, 399 U. S. 66.)
Judge Goldberg construed the provisions of section 40 of the New York City Criminal Court Act (the predecessor of CPL 170.75) directing the court “to examine the case” and to hold the defendant for trial or to discharge him, to apply only to cases where the defendant, the prosecution or the court demanded or directed a three-Judge trial. He said (p. 835): “ By its terms this provision is limited to trials before a three-Judge panel. This provision for hearings has been called ‘ vestigial ’, undoubtedly because it was enacted in 1962 as a provision in one of the court reorganization bills which, in consolidating the Court of Special Sessions with the Magistrates’ Courts, continued the hearing which the Magistrates had held before sending a case to Special Sessions for trial. *670 In any event, the provision, by its explicit terms, is inapplicable either to a trial before a single Judge or a trial by jury; it is confined to a hearing preliminary to a trial before a three-Judge court.”
Even before the effective date of the Criminal Procedure Law, questions had been raised as to the need for continuing the practice of holding preliminary hearings in New York City misdemeanor cases.
Thus, Staff Comment on the proposed CPL, article 85 (McKinney, Proposed N. Y. CPL, 1967 pamphlet, p. 116), after noting that with the passage, in 1966, of the Uniform Justice Court Act, Justices of the Peace, along with City Courts, District Courts and Village Police Courts, would have original jurisdiction of misdemeanors and thus, would no longer be required to conduct preliminary examinations of misdemeanor charges, stated:
“ The situation in New York City, however, is different. Under § 40 of the New York City Criminal Court Act,. a defendant charged with a misdemeanor (with a few exceptions) may be tried by a panel of three judges in lieu of a trial by one judge. Subdivision 2 of that section provides that where such trial is. to be held, the judge shall conduct a preliminary examination before the case is sent to the panel.
• “ This procedure is a vestige of the time when persons charged with a misdemeanor (as well as a felony) were required to be brought for arraignment to the then City Magistrates’ Court of the City of New York. That court, which did not have jurisdiction to try misdemeanors (again, with a few exceptions), would conduct a preliminary examination to determine whether the defendant should be held for trial in the Court of Special Sessions of the City of New York. If it was so decided, the defendant would then be held for the further proceedings in the Court of Special Sessions. The court reorganization act of 1962 abolished these two courts and replaced them with the single Criminal Court of the City of New York, which combines the functions of its two predecessors. A judge thereof who sits as a committing magistrate also sits as a trial court on charges of misdemeanor. While, as indicated above, a misdemeanor charge may be sent for trial to a panel of three judges, this panel is also part of the same court. The continuation of the practice of examining a case before it is sent to the three judge panel, therefore, is really not necessary. While previously required to bridge the jurisdictional gap between the City Magistrates’ Court and the Court of Spe *671 cial Sessions, it no longer serves that purpose in the consolidated court, and has become merely an anachronism. It could very well have been repealed in 1962 as part of the court’s reorganization. Since it is proposed in this revision that the procedure in the New York City Criminal Court will, in the main, be subject to the provisions of the Criminal Procedure Law, there will be no provision for preliminary examination of misdemeanor charges in New York City — or anywhere else.
“ The net effect is that the preliminary examination will be relegated solely to charges of felony.”
The 1968 and 1969 drafts of the Criminal Procedure Law omitted reference to misdemeanor hearings in New York City Criminal Court. In fact, in the Memorandum in Support and Explanation of the Final (1969) Report on the Proposed Criminal Procedure Law, prepared by the Commission on Revision of the Penal Law and Criminal Code, published in McKinney’s 1969 Sessions Laws of New York at page 2347, it was again stated that the preliminary hearing for misdemeanor cases in New York City was an anachronism. The Memorandum reads:
“ Outside of New York City, there is not and never has been any procedure for a preliminary examination or hearing of a misdemeanor case by the magistrate or local criminal court with which the charge is lodged in order to determine whether the case should be further prosecuted. In New York City, however, the situation is different owing to procedure derived from the old dual lower court system (the Magistrates Court and the Court of Special Sessions) which prevailed prior to 1962. Under that system, misdemeanor charges, if they were to be tried or prosecuted, had to be sent by the Magistrates Court, which did not have trial jurisdiction thereof, to the Court of Special Sessions which did. A hearing, therefor, was held in the former court and, if .there was sufficient proof of the defendant’s commission of a misdemeanor, he was held for the action of the latter court.
“ With the consolidation of these courts in 1962 into a single New York City Criminal Court, the entire reason for the preliminary hearing vanished. In a vestigial manner, however, the New York City Criminal Court Act (§ 40[2]) still entitles the defendant to a preliminary hearing in most misdemeanor eases. This anachronism is especially unfortunate in view of that court’s overpowering volume problems.
“ The proposal eliminates the misdemeanor hearing in the New York City court by the simple process of not providing for it. (It is to be remembered that virtually all of the pro *672 cedural provisions of the New York City Criminal Court Act are to he repealed.) ”
Professor Richard Gr. Denzer, in his commentary (McKinney’s Cons. Laws of N. Y., Book 11A, CPL 170.75) refers to the New York City misdemeanor hearing as “in one sense an anachronism and, in another, a device used by defendants as a discovery proceeding.”
In the light of the foregoing analyses, one is justified in wondering why the New York City misdemeanor hearing was ultimately restored by the Legislature to the final draft of the law.
A possible answer is suggested by the Special Report on the Proposed CPL (1969 draft) prepared by the Committee on Criminal Courts, Law and Procedure of the Association of the Bar of the City of New York.
The committee states its opinion 11 that the misdemeanor hearing is an essential and critical part of the misdemeanor procedure in New York City and should be retained. We also believe the extension of the practice throughout the balance of the state is desirable.” (p 13).
The committee justified its position by the belief that in New York City, the hearing removes cases “which do not belong in the courts.” The committee cited the annual statistics of the court for 1967 that out of 119,000 nontraffic offenses, 22,000 were dismissed without trial, and then went on to say:
“Although it is impossible to ascertain from these reports how many of the 22,000 dismissals were because of the failure of the complainant to appear, the death of the defendant, etc., it seems clear that the majority of the dismissals were due to the failure to make out a prima facie case at a preliminary hearing. It would appear that the estimate made by the Legal Aid Society of a dismissal rate of slightly more than 10% of the total complaints is a modest estimate.
“ The prompt removal of over 10% of the misdemeanor charges is absolutely essential to the continued functioning of a system already strained to the breaking point.”
Whether or not the Association of1 the Bar report was instrumental in reincarnating subdivision (2) of section 40 of the New York City Criminal Court Act in the form of CPL 170.75, re-examination of1 the premises on which the report was based, is long overdue.
First, the Criminal Court dockets are now virtually current and thus the court is in a better position to try cases.
Second, thej- prima facie ’ ’ standard mentioned by the committee has now been attenuated to a “-reasonable cause ” test.
*673 Third, sufficient and more recent statistical data must by now have been accumulated by which to measure the belief that preliminary hearings eliminate a substantial number of groundless misdemeanor prosecutions in the Criminal Court.
Finally, there is the possibility that differentiating between New York City and the other political subdivisions of the State may be unconstitutional, in that defendants charged with misdemeanors outside New York City may thereby have been deprived of equal protection of the law.
The courts sanction territorial discrimination in the application of rights accorded to defendants in criminal cases where the differentiation is based on reasonable classification (Salsburg v. Maryland, 346 U. S. 545; People v. Felberbaum, 9 N Y 2d 213).
However, geographical discrimination has been struck down in the absence of evidence indicating that efficiency in procedure would be impeded by uniformity of practice between cities having less than one million population or Cities whose population exceeded that number (Matter of Rosenthal v. Hartnett, 71 Misc 2d 264). In Commissioner of Public Welfare of City of N. Y. (Martinez) v. Torres (263 App. Div. 19, 22 [1st Dept.]), the court held unconstitutional a geographical distinction in. the quantum of proof required in paternity proceedings in New York City and those held elsewhere in the State, on the ground that the law creating the distinction was not based upon any reasonable classification or on “ any ground of difference having a fair and substantial relation to the object of the legislation ”.
As the law now stands, misdemeanants facing trial outside New York City may conceivably assert that it is unfair to permit others to have the benefit of rapid possible disposition of the charges against them by means of a preliminary hearing — a benefit denied to them. They may urge also that defendants in New York have the advantage of discovery through the medium of the hearing.
We are thus required to examine more closely the real purpose of the preliminary hearing.
The purpose of a preliminary examination is summed up in American Jurisprudence, Second Edition (vol. 21, Criminal Law, § 443, pp. 446-447), as follows: “ The primary purpose of a preliminary hearing is to ascertain whether there is reasonable ground to believe that a crime has been committed and whether there is just cause to believe the defendant committed it. Further purposes are said to be to perpetuate testimony, to *674 determine the amount of bail to be given by the prisoner in case he is held for trial, to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and the expense of a criminal trial and of the deprivation of his liberty if there is no probable cause for believing that he is guilty of the crime.”
In People v. Epps (67 Misc 2d 907), the Appellate Term of the Supreme Court, First Department, sustained the refusal of the Judge presiding at a preliminary examination to continue a hearing in order to compel the arresting officer to produce his memo book, in aid of cross-examination then in progress. The Per Curiam opinion (one Judge dissenting) stated (p. 908): “ The examining Judge expertly evaluating the weight of evidence already before him, in terms of probable cause, no doubt shrewdly recognized counsel’s request as, essentially, a time-wasting tactic serving no useful purpose at that stage, yet seriously impairing the despatch of the heavy volume of criminal eases incessantly inundating the Criminal Court of the City of New York. He rightly observed that the preliminary examination was not a pretrial discovery proceeding. Coleman v. Alabama (399 U. S. 1) and Blue v. United States (342 F. 2d 894) relied upon in the dissent, are not authorities to the contrary. These cases establish the principle that the preliminary examination of the People’s case is a critical stage of the proceedings against the defendant, so far as the right to counsel is concerned. They do not equate the preliminary examination to a trial in all other respects; nor undertake to curtail the examining Judge’s discretion in regulating the cross-examination of witnesses in the preliminary examination of the People’s evidence of probable cause.”
In Coleman v. Alabama (399 U. S. 1, 8, supra), Justice Brexxan, expressing the view of six members of the Supreme Court, said: “ the preliminary hearing is not a required step in an Alabama prosecution * * * the sole purposes of a preliminary hearing are to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury, and, if so, to fix bail if the offense is bailable.”
Holding that the preliminary hearing was a critical stage of the criminal process and thus made it necessary for the State to provide counsel for an indigent defendant, the majority opinion underscored (p. 9) the benefit of ‘1 the guiding hand of counsel ’ ’ at the hearing. Listed among the advantages of such representation were the fashioning of a vital impeachment *675 tool for use in cross-examination of the .State’s witnesses at the trial, to preserve testimony favorable to the accused of witnesses who might not appear at trial and to discover more effectively the prosecution’s case against the defendant, thus making possible the preparation of a proper defense to meet the case at trial.
But it must be noted that the .Supreme Court specifically refrained from saying that the preliminary hearing is essential, confining itself to the holding that if a hearing took place, the defendant was entitled to counsel.
In United States v Motte (251 F. Supp. 601 [S. D. N. Y.]) District Judge Tenney denied a motion to dismiss an indictment handed down by a Grand Jury after a hearing was scheduled, but before it actually took place. There, the defendants asserted that their rights had been violated by failure to accord tjiem a preliminary hearing. He stated (p. 603): “ It has been consistently held that an accused has no constitutional right to a preliminary hearing. Dillard v. B ornar, 342 F. 2d 789 (6th Cir. 1965), and the failure to accord an accused a preliminary hearing is in no way violative of due process. United States v. Smith, 343 F. 2d 847 (6th Cir. 1965).”
In People v. Jackson (48 Misc 2d 1026 [Sup. Ct., N. Y. County]), Mr. Justice Geller said the purpose of a preliminary hearing was to safeguard a person charged with a felony against being improperly committed on the sole basis of a charging affidavit or complaint. But, if the Grand Jury indicts, that purpose has been accomplished, since a grand jury may indict only upon legal evidence sufficient, in its judgment, to warrant conviction by a trial jury. As stated by Justice Geller (p. 1028): “ Once a defendant has been indicted, whether it be in the first instance or after a preliminary arrest, the danger of imprisonment on an unfounded charge without probable cause no longer exists. Once a defendant has been indicted, there is no purpose or function left-to be performed by a committing Magistrate, whose jurisdiction as to a felony charge extends solely to determining whether a defendant should be held for action by the Grand Jury.”
There is to be sure some authority for the proposition that the preliminary hearing serves a more useful purpose, so far as the defendant is concerned, than establishing reasonable cause to require him to stand trial.
In an article in Syracuse Law Review (vol. 18, pp. 207, 213 [1966]), Professor J. Walter McKenna, after citing People v. Jackson (48 Misc 2d 1026, supra) and People v. Belmont (48 *676 Misc 2d 1057 [Sup. Ct., Queens County]) says: “ From the viewpoint of the practitioner, it cannot be denied that the preliminary examination serves more practical purposes than to establish probable cause, to wit: (1) It serves as a pre-trial discovery vehicle in those cases where the defendant finds it difficult to learn of the evidence against him in the hands of the prosecution; and (2) the transcript of the hearing furnishes cross-examination material to be used at the later trial. To safeguard these valuable rights of the defendant, legislative action appears necessary in view of the present state of the law as indicated by the instant cases.”
But, in People ex rel. Pierce v. Thomas (70 Misc 2d 629 [Sup. Ct., Bronx County]) Mr. Justice Gellixoff discusses the function of a preliminary hearing. In that case the defendant sought release on a writ of habeas corpus, charging that the Judge at a preliminary hearing had limited his examination of the complaining witness and had refused him the right to call the arresting officer as a witness to the events surrounding the station house identification, thereby depriving him of the opportunity of challenging the reasonableness of the arrest. Justice Gellixoff wrote (p. 630): “ The preliminary hearing * * * is quite limited in scope. The People’s case need only, as here, present the broad outline of the facts; and the court may narrowly limit cross-examination. The hearing is not intended as a pretrial discovery device, nor is it a substitute for the trial itself.” (Emphasis supplied).
In the instant case, the defendants also assert that a prosecutor’s information may more easily be dismissed under the provisions of CPL 170.75, than by a motion in the Supreme Court under CPL 170.35 or 170.50. This court doubts the applicability of that argument to prosecutors’ informations filed at the direction of the Grand Jury.
Defendants argue that the Supreme Court is precluded by subdivision 3 of CPL 190.70 from looking into reasonable cause for the information “beyond the face of the bare summary set forth on the grand jury direction.” That statement is groundless. CPL 170.50 permits defendants, before entering a plea or commencement of trial to move to challenge the legal sufficiency of the evidence before the Grand Jury.
Finally, the defendants complain that denial of a hearing deprives them of the full panoply of procedure including “ such constitutionally protected rights as the right to cross-examination, the right to call witnesses and to testify on one’s own behalf.”
*677 The right to cross-examine witnesses is limited by the number of witnesses the prosecutor calls to establish the charges. Thus, in any event, the defendant may not be able to cross-examine People’s witnesses until they testify at the trial. The right of a defendant to call witnesses at a preliminary hearing is discretionary with the court (CPL 180.60, .subd. 7) and the defendant’s right to testify in his own behalf before the Grand Jury is secured to him by CPL 190.50.
The strongest weapon in defendants’ apnory is the explicit language of CPL 170.75 which confers the seemingly unqualified right to a preliminary hearing, despite language which indicates that the purpose of the hearing is to determine reasonable cause to believe that the defendants committed the misdemeanors with which they are charged.
Section 143 of Statutes (McKinney’s Cons. Laws of N. Y., Book 1) headed “Unreasonableness” instructs us that statutes must be construed in the light of common sense (p. 286). Further it is a general rule in the interpretation of statutes that “ they shall receive a reasonable construction, where there is doubt or uncertainty in regard to the legislative intent ’ ’ (pp. 287, 288). Also “the courts should strive to avoid a construction which would make a statute unreasonable, or lead to unreasonable results.” (p. 289).
Moreover, section 111 of Statutes notes that the courts, in a proper case, may depart from literal construction and sustain the legislative intention although it is contrary to the literal letter of the .statute. “In considering the necessity of literal construction of a statute or the propriety of a departure therefrom, it must be kept in mind that the intent of the Legislature is the primary object sought in the interpretation of statutes ; and that whenever such intention is apparent, it must be followed in construing the statute. While such intention is first to be sought from a literal reading of the act itself, and the words and language used, giving such language its natural and obvious meaning, it is generally the rule that the literal meaning of the words used must yield when necessary to give effect to the intention of the Legislature.”
This court has reason to believe that while most Criminal Court Judges do not permit hearings on prosecutors’ informations, filed by direction of grand juries, some Judges grant such hearings. It is to be hoped that this opinion may help to bring about uniformity and may also call the attention of the Judicial Conference and the Legislature to the anachronistic provisions of CPL 170.75 and the possible constitutional impact *678 of continuing to grant misdemeanor hearings in New York City Criminal Court but not in misdemeanor prosecutions outside New York City.
In any event, in view of this court’s belief that the charges against the defendants have been examined by the Grand Jury, there appears to be no tenable basis for granting them a hearing in this court.
The motion is denied and the defendants will proceed to trial.