Aaron P. Goldstein, J.
This is a motion by defendant for a preliminary hearing on a prosecutor’s misdemeanor inf ormation charging criminal trespass and petty larceny. Defendant was *1082 originally arraigned on a felony complaint charging burglary in the third degree, and the case was-presented directly to the Grand Jury without any preliminary felony hearing. The Grand Jury, pursuant to iCPL 190.70 (subd. T) directed that a prosecutor’s information be filed, which direction has been followed. After arraignment thereon, defendant requested a preliminary hearing, relying on CPL 170.75. The District Attorney, in opposition, has tendered a one-page statement relying almost completely on the decision of my learned colleague, Judge M. Marvin Berger, in People v. McClafferty (73 Misc 2d 666). (The District Attorney also cites CPL 100.10, 100.50, 190.75, and 70.10. The complete irrelevance of these sections to the District Attorney’s position is so obvious no comment is necessary other than to observe that if the object of the People’s one-page argument is to impress this court by a simple citation of multiple statutory sections, that object has had a reverse impact.)
The McClafferty case represents apparently the only reported decision in this State dealing with this novel, interesting, and important question, and the views of Judge Berger, set forth so cogently, and obviously the product of study, merit a response in depth, particularly since this court feels constrained to disagree with the conclusion there reached.
It is clear that all parties are in accord on one fundamental point. CPL ,190.70 (subd. 1) and CPL 170.75, read literally, and giving full effect to the ordinary meaning of1 the explicit words there employed, mandate a hearing on a prosecutor’s information, even where such information is issued pursuant to a Grand Jury direction after the Grand Jury has itself heard the case. Thus, CPL 190.70 (subd. 1) offers to the Grand Jury the option, after hearing a case, to direct that, in place of a felony indictment, a prosecutor’s misdemeanor information be filed. CPL 170.76, in language which on its face is unambiguous, directs that on every prosecutor’s information (other than gambling and multiple dwelling violations) a defendant must, upon request, be granted, in New York City, a preliminary hearing “ to determine whether there is reasonable cause to believe that he committed such misdemeanor.” No distinction is made between prosecutors’ informations which reach the criminal court as the result of a Grand Jury direction, and other prosecutors’ informations. All such informations are covered equally, and those of us who have been reared on the most elementary principle of statutory interpretation, that where legislative language is clear there is no room for judicial legislation under the guise of reaching a presumed legislative inten *1083 tion which runs contrary to the explicit language, would rest our decision on that ground and have done with it..
However, Judge Berger, reaching a conclusion contrary to the express statutory language, has resorted to another principle of statutory construction, a principle which is often misunderstood. To quote from McClafferty (p. 677): “ Section 111 of [McKinney’s] Statutes notes that the courts, in a proper case, may depart from literal construction and sustain the legislative intention although it is contrary to the literal letter of the statute. ‘ In considering the necessity of literal construction of a statute or the propriety of a departure therefrom, it must be kept in mind that the intent of the Legislature is the primary object sought in the interpretation of statutes; and that whenever such intention is apparent, it must be followed in construing the statute. While such intention is first to be sought from a literal reading of the act itself, and the words and language used, giving .such language its natural and obvious meaning, it is generally the rule that the literal meaning of the words must yield when necessary to give effect to the intention of the Legislature.’ ”.
The court’s quotation from McKinney’s (Cons. Laws of N. Y., Book 1) is, of course accurate, but it suffers an important omission. It would be well at this point to add an additional quotation, appearing in the very same section of McKinney’s Statutes, albeit on a later page: “ However, the rule that the literal language of a statute is not always controlling in the interpretation thereof is a principle to be applied with extreme caution, and only where the plain intent and purpose of the statute would otherwise he defeated,. The doctrine permitting departure from literal construction does not authorize the courts to disregard arbitrarily the plain import of the language used in a statute.” (McKinney’s, supra, pp. 230-231; emphasis added.)
Thus, McClafferty relies on only one half of the rule stated in McKinney’s,. neglecting the crucial qualification quoted, supra. The half-rule as quoted in McClafferty represents a commentator’s capsule comment as to the state of our case law. Standing alone it is misleading and inaccurate, and is saved only by the commentator’s later insertion of the critical qualification.
An examination of our case law, with particular reference to the very cases cited in support of the half-rule quoted in McClafferty, reveals that one of the cardinal principles of statutory construction remains constant: where the statutory lan *1084 guage is clear and unambiguous, the judiciary has no choice but to follow the legislative language — any remedy remains the exclusive province of the Legislature. The difficulty arises as the result of an apparent exception to the basic rule, an exception which, upon careful evaluation, proves to be not an exception at all, but simply a logical application of the rule regarding unambiguous statutory language. The rule in its totality may be stated as follows: where the statutory language is clear there is no room for judicial legislation, but where the language, taken at its face value, produces a result which is absurd, or manifestly unjust, or productive of great public injury, or is in direct contravention or derogation of the statutory purpose, then this in itself creates an ambiguity which then, and only then, allows judicial interpretation in order, if possible, to remove the absurdity. The cases cited in the very portion of McKinney’s quoted in McClaferty clearly support this view: Matter of Barry Equity Corp. (Marcia Hat Co.) (276 App. Div. 685) — literalness held absurd; Metropolitan Life Ins. Co. v. Durkin (195 Misc. 1040) — literal interpretation defeats statutory purpose and leads to absurdity; Packer v. Board of Stds. and Appeals (62 N. Y. S. 2d 54) —ambiguity resolved in favor of interpretation which would not produce injustice or lead to absurdity; Matter of Hogan v. Culkin (18 N Y 2d 330) — literalness would thwart manifest legislative policy; Matter of Meyer (209 N. Y. 386) — literalness would produce inequality or injustice; People ex rel. Wood v. Lacombe (99 N. Y. 43) —literalness produces absurdity; Onondaga Commercial Dry Wall Corp. v. 150 Clinton St. (28 A D 2d 71) — literalness destroys entire purpose and intention of statute; Ewen v. Thompson-Starrett Co. (208 N. Y. 245) — literal construction absurd.
Thus, the crux of the issue here presented is whether a literal reading of CPL 170.75, requiring a preliminary hearing on all prosecutors’ informations, including an information filed by direction of the Grand Jury, produces an absurdity, or defeats the legislative policy and purpose, or produces an unwarranted hardship or injustice, to such an extent as to render ambiguous that which on its face seems clear. In this connection, it is appropriate to examine the nature and function of a preliminary hearing, together with its place in the administration of criminal justice in New York City. McClafferty rightly observes that the fundamental objective of the New York statutory misdemeanor preliminary hearing is to establish whether there is reasonable cause to hold the defend *1085 ant for trial. (GPL 170.75, subd. 1:) But conceding this elementary point, does this dispose of our problem? Actually, in cold pragmatic terms, the preliminary hearing serves a far broader function, a function which reaches Federal constitutional levels, a function which simply cannot be ignored. There is a tendency in some quarters to view defense counsel’s demanding a preliminary hearing as somehow engaging in devious, sly conduct, seeking some unholy advantage, if only to thwart the ends of justice. The truth is otherwise. See 1 ¡Cipes, Criminal Defense Techniques (ch. 8), where the author points out .the perfectly legitimate discovery aspects of the preliminary hearing, and suggests that defense counsel who waive these hearings often sacrifice the interests of their clients. And can anyone gainsay that to the extent that any defense counsel appropriately serves the interests of any one client accused of crime, he serves the interest of all of us? But, it will be argued, the preliminary hearing is not a discovery device, and to use it for discóvery is to pervert its basic function. This is true as far as it goes, but consider the pertinent observations of the United States Court of Appeals in a recent decision, Coleman v. Burnett (477 F. 2d 1187). Said the court (pp. 1199-1200): “ The mission of the hearing is an investigation into probable cause for further proceedings against the accused. It does not include discovery for the sake of discovery. To be sure, the evidence the Government offers to establish probable cause is by nature also discovery for the accused. ¡So also is information adduced on cross-examination of Government witnesses on the aspects of direct-examination testimony tending to build up probable cause. In those senses, some discovery becomes a by-product of the process of demonstrating probable cause.”
This decision, along with a number of others of the same Federal Court of Appeals, and together with the United States Supreme Court decision in Coleman v. Alabama (399 U. S. 1), are particularly appropriate because they are closely involved with an interpretation of the Federal Magistrates’ Act (U. S. Code, tit. 18, § 3060), which provides for a preliminary hearing remarkably similar to the New York scheme. In Coleman v. Burnett (supra), the court recognized that “probable cause ” was the sole objective of the preliminary hearing, but then in pointing out the statutory method for determining probable cause, the court emphasized that the Magistrate is obliged to listen to both sides. Said the court (p. 1204): “ In sum, ‘ the evidence ’ which alone must guide resolution of the probable *1086 cause issue is the whole evidence — for the defense as well as for the prosecution. The magistrate must ‘ listen to * * * [the] versions [of all witnesses] and observe their demeanor and provide an opportunity to defense counsel to explore their account on cross examination. ’ The magistrate ‘ sits as a judicial officer to sift all the evidence before resolving the probable cause issue * * * ’ , He ‘ cannot decline to issue subpoenas on the ground that only the Government’s evidence is probative, ’ ” citing Ross v. Sirica, 380 F. 2d 557.
It was precisely for this reason that the Supreme Court, in Coleman v. Alabama (supra) ruled that the preliminary hearing constituted a critical stage of the proceedings, sufficiently critical to mandate a reversal of a conviction where counsel was denied to a defendant during a preliminary hearing.. And in Coleman v. Burnett (supra) the Federal court ruled that the failure of a Judge at a preliminary hearing to permit the defendant to confront the undercover agent involved in marijuana sales by the defendant was sufficiently prejudicial to mandate remedial process, such as revealing to defense counsel the undercover agent’s testimony before the Grand Jury, or arranging an interview between defense counsel and the undercover agent, or arranging for a deposition by the undercover agent pursuant to defense counsel’s written interrogatories. The major reason a new hearing was not ordered was that the Federal Magistrates’ Act specifically forbade such a hearing after indictment, but the court referred to its own prior decisions, antedating the Federal Magistrates’ Act, where rehearings were mandated even after indictment. This is referred to here simply by way of demonstrating that there is nothing at all unreasonable, much less absurd, in ordering a preliminary hearing even after the Grand Jury has heard the case.
For repeated observations as to the salutary nature of preliminary hearings, as to their crucial function in protecting constitutional rights, as to the prejudice which may and often does result because of denial of the hearing, or inappropriate procedure therein, see Dancy v. United States (361 F. 2d 75). (See, also, United States v. King, 482 F. 2d 768; Holmes v. United States, 370 F. 2d 209; Blue v. United States, 342 F. 2d 894.)
Lest there ,be any confusion, this court is not now suggesting that a preliminary hearing is constitutionally mandated, although we may well reach that point soon. This court is only emphasizing that there is nothing even remotely absurd, or in *1087 defeat of public policy, or injurious to the public, or unreasonable per se, in mandating a preliminary hearing even after the Grand Jury has heard the case. As far back as 1921, in the only out-of-State decision this court has located on all fours with the procedural question here presented, the Oklahoma Criminal Court of Appeals accorded approval of similar statutory procedure, recognizing the propriety of a hearing on a new information after a demurrer to an indictment was sustained, and instead of a new indictment a new information was filed. (Davenport v. State, 20 Okla. Cr. 253.)
There are yet other pragmatic considerations which McClafferty recognizes but discards as unpersuasive. The use of a preliminary hearing as a discovery device, and the suggestion that this was improper, was brought to the attention of our Legislature, with the recommendation that the preliminary hearing be discarded completely. (73 Misc 2d, pp. 670-671.) Notwithstanding this explicit recommendation, the Legislature retained the preliminary hearing in New York City. Is this not the clearest manifestation of legislative purpose to override the objection? McClafferty proceeds to suggest that the legislative action might be attributable to the congested condition of the calendars in New York City, a condition which resulted in the recommendations of the Committee on Criminal Reports, Law and Procedure of the New York City Bar Association, to the effect that preliminary hearings should continue because they serve to eliminate many cases at their early stages. However, McClafferty argues, a “ re-examination of the premises on which the report was based, is long overdue.” (p. 672). Possibly so, but clearly this re-examination is for the Legislature, not the courts.
The preliminary hearing serves many other practical purposes which make it a salutary device in criminal administrative procedure. Often, a perceptive defense attorney, confronted with the clear preliminary evidence, will undertake to persuade his client to plead rather than go to trial, an undertaking which will frequently succeed because the client himself has come face to face with a strong preliminary case. .The hearing may serve clearly to indicate the futility of a subsequent motion to suppress, thus again inducing a plea. Contrariwise, a preliminary hearing may reveal that while reasonable cause may be present, proof beyond a reasonable doubt is not, and the mutual action of knowledgeable District Attorneys and defense counsel, supported by an equally knowledgeable and pragmatic Judge may, by stipulation, convert the hearing *1088 into a trial, allowing an acquittal on the issue of reasonable doubt, and saving all parties, with particular reference to the State and City of New York, the expense and inconvenience of further proceedings. Finally, there is the possibility of a reduction in charge by a Judge based on the evidence adduced at a hearing, i.e., assault in the third degree to harassment, again probably inducing a plea or at the very least eliminating a jury trial. In short, the preliminary hearing is in point of fact one of the most useful administrative tools available to Judges, prosecutors, and defense counsel alike. If policy considerations such as these induced the Legislature to mandate hearings in the New York City criminal courts, and if in fact such hearings have reduced congestion, all the more reason to retain the hearings lest the problems of calendar crowding return. And it must be noted that these crucial policy considerations apply to hearings after Grand Jury action as well as to other standard misdemeanor preliminary hearings. For once the grand jury has directed that an information be filed, the proceeding starts de novo. The defendant must certainly be arraigned on the new information, CPL 170.10 (subd. 1), or does McClafferty mean to suggest that an arraignment too may be dispensed with — after all the defendant has already been arraigned, could the Legislature have intended'a second arraignment? Of course it could, and it did, at least it said so. And it said so as well with regard to a hearing.
Finally, there is the large issue of possible denial of equal protection, an issue mentioned obliquely in McClafferty with reference to the absence of hearings outside of New York City coupled with the suggestion that this might involve a constitutional defect. But consider the impact of McClafferty. John Doe is arrested on a misdemeanor complaint, and is entitled to a preliminary hearing in New York City as a matter of absolute right. His neighbor, Bichard Boe, is arrested on a felony complaint which is improperly lodged, felony bail is set, and, on a direct presentation the grand jury takes corrective action by directing that a misdemeanor information ¡be filed. Bichard Boe now appears in the criminal court on the same exact misdemeanor charge as his neighbor John Doe only to be blithely told that his right to a preliminary hearing has been lost. And for what reason? For the simple reason that whoever lodged the felony complaint lodged it inappropriately in the first instance. Is it possible not to find an inequity here, a manifest injustice? It is no answer to say, as McClafferty says, that in a sense Bichard Boe received an advantage, because the *1089 standards for grand jury action are higher than reasonable cause. This may be theoretically true, but the fact remains that Richard Roe has been denied the confrontation, the right to cross-examine, the right to produce witnesses and to have the examining Judge hear the entire case (CPL 170.75, subd. 2; GPL 180.60) in short, precisely the crucial rights emphasized by the Federal courts as part and parcel of the advantages which accrue to a defendant from a preliminary hearing, advantages never lightly to be discarded, advantages the denial of which calls for remedial action. Surely, Richard Roe has been denied equal protection, requiring, again, a construction of the statute contrary to McGlafferty in application of the elementary principle that a statute must never be construed so as to be rendered unconstitutional.
To repeat, and in summary, this court is not now deciding that preliminary hearings are constitutionally mandated. This court is determining simply that the Legislature, in the clearest language, has ordered a preliminary hearing (as well as an arraignment) on all prosecutors’ informations, including those filed by grand jury direction; further, that this explicit mandate, far from being absurd, is utterly reasonable and in accord with the latest developments in Federal constitutional law as expressed in the decisions heretofore cited; that this mandate does not defeat the legislative purpose, but is actually in promotion thereof; that this mandate performs no public harm or injury, visits no prejudice, nor produces any injustice, but rather, conversely, renders equal and equitable treatment to all accused misdemeanants in the New York City criminal courts and thereby stands furtherance of justice; that consequently this mandate is not ambiguous and therefore does not permit any attempt to correct what some conceive to be a legislative oversight. If in fact the Legislature intended, and still intends to reach some other result, that action is for the Legislature and the Legislature alone to achieve.
For all of these reasons, the motion herein for a preliminary hearing is granted.