Alfred H. Kleiman, J.
The information charged the defendant with the crime of “ Possession of (rambling Records in the Second Degree in violation of Section 225.15 of the Penal Law, in that the defendant with knowledge of the contents thereof, possessed writing and paper of a kind commonly used in the operation and promotion of a bookmaking scheme or enterprise, to wit: slips of paper containing gambling notations and reflecting bets on the outcome of sporting events.”
The defendant was tried and found guilty of violating subdivision 1 of section 225.15 of the Penal Law. Pursuant to section 330.30 of the Criminal Procedure Law defendant moves to set aside the "verdict upon the grounds the statute is-unconstitutional.
Subdivision 1 of section 225.15 of the Penal Law reads as follows:
‘ ‘ A person is guilty of possession of gambling records in the second degree when, with knowledge of the contents thereof, he possesses any writing, paper, instrument or article:
“1. Of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise. ’ ’
Defendant contends that this law is unconstitutional because (a) it is void for vagueness and (b) it prohibits “legitimate activities ” in violation of the First, Fifth and Fourteenth Amendments.
Void for vagueness “ simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.” (United *998 States v. National Dairy Corp., 372 U. S. 29, 32-33.) It is argued that the language “ of a kind commonly used ” in the operation or promotion of bookmaking is unconstitutionally vague, in that the same articles may be commonly used in the promotion of off track betting (O.T.B.). The same argument could be made as to other legal gambling activities such as bingo, State lotteries and pari-mutuel betting. But in determining the sufficiency of the notice to a defendant, the statute must be examined in the light of the conduct with which he is charged. (United States v. National Dairy Corp., supra, p. 33.) The constitutional requirement of definiteness is. only violated by a criminal statute when it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the law. (United States v. Harriss, 347 U. S. 612, 617.)
In the ease at bar the court found that the defendant possessed slips which were records of lay off bets on baseball games. The defendant has not contended that the statute did not give him, or an ordinary person in similar circumstances, notice that his conduct violated the letter of the statute, but rather argues that the statute might be unconstitutionally applied to others under different circumstances. This contention is without merit. The articles which this defendant was found guilty of possessing were essential “ 1 tools ’ of the. game ” (People v. Lalli, 5 N Y 2d 536, 540; see People v. Engeman, 129 App. Div. 462, 466-467). It is a well-known principle of constitutional law that “ one to whom application of a statute is constitutional will not be heard to attack the statute on ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional”. (United States v. Raines, 362 U. S. 17, 21.) As applied to this defendant I find that the statute sets forth sufficient ascertainable standards to give him fair notice that his conduct was forbidden.
Defendant’s argument that the statute prohibits legitimate activities, and is therefore void on its face, must be summarily dismissed as a matter of law. The power of the State to prohibit gambling and to declare such conduct criminal has long been recognized by our highest courts. (People v. Wolosky, 296 N. Y. 236; People v. Adams, 176 N. Y. 351, affd. Adams v. New York, 192 U. S. 585; see Marchetti v. United States, 390 U. S. 39, 44.) “ The power of the legislature to declare that which is perfectly innocent in itself to be unlawful is beyond question ”. (Lawton v. Steele, 152 U. S. 133, 143.) “ Statutes contain very many instances of acts prohibited, the criminality *999 of which consists solely in the fact that they are prohibited, and not at all in their intrinsic quality ”. (People v. West, 106 N. Y. 293, 296.) Whereas these latter cases talk in terms of “ furtherance of a public purpose ” or the risk of “ endangering public morals ’ ’, factors whose relevancy to our present gambling laws are being seriously questioned today, this is not a sufficient basis for finding this statute void on its face. Because of the strong presumption that a statute duly enacted by the Legislature is constitutional, this court is powerless to declare the statute under review invalid (People v. Pagnotta, 25 N Y 2d 333, 337; similarly People v. Di Carlo, 62 Misc 2d 638, 639).
The fact that this court finds this statute valid as a matter of law is not an indication that this court believes this to be a good law. To the contrary, I consider it my duty to question its usefulness in this opinion. The learned Judge David L. Bazelon" recently said that 11 by incessantly asking questions, courts can do a substantial amount to insure that the agencies which are supposed to be dealing with a particular problem are actually looking for answers instead of taking action [or no action] out of prejudice or ignorance. * * * The judicial process is a social institution designed to guarantee that this probing will be done.” (New York Times, Aug. 31, 1971, p. 27.)
What is the present purpose of our gambling laws? Who is it protecting and from whom?
Certainly it cannot be argued that it protects public morals. Not when the State is daily promoting gambling in lotteries and at the race tracks or the city at its horse parlors (O.T.B.). Not when our religious institutions beckon us to the bingo tables. In terms of public morality what is the distinction between placing a ten cent bet at the neighborhood policy bank and a two dollar bet at an off track betting window? Should not the distinction be more than the $1.90 differential? Does not this double standard make a mockery of the law?
When the relationship between standards of morality and the criminal law is completely divorced the ends of justice will not be met. As a practical matter such law is rarely enforced. Let us look at the record. Last year in the Criminal Courts of the City of New York, 9,611 gambling cases were disposed of. Defendants found guilty were subject to one year’s imprisonment and/or fines. 6,442 cases were dismissed or the defendants otherwise discharged. 3,073 defendants were fined. Only 96 defendants were .sentenced to short prison terms (59 from one to 30 days) and practically all those cases originated as more serious felony charges.
*1000 What is the justification for burdening this already overburdened court with these nonviolent “ crimes ”? Is it to protect the individual from organized crime ? As one expert once said “ Only in the United States where prohibition is most extensive and absolute is there a correlation between gambling, on the one hand, and official corruption and racketeers, on the other.” (The Catholic Lawyer, vol. 1, no. 1, p. 12 [1955].) Do not today’s headlines corroborate this statement? And if this is the primary purpose of these laws would not the use of the government’s police power to register and license the bookmaker or policy banker give the public the better protection it needs? Or are these laws needed to protect the government’s economic interest in gambling? If so, would not the government’s use of its taxing powers sufficiently protect such interests? And would not use of such police and taxing powers be more effective if these activities were legalized? (See Marchetti v. United States, 390 U. S. 39, and Grosso v. United States, 390 U. S. 62, which precluded the conviction of violators of gambling tax laws where the privilege against self-incrimination was invoked. Cf. United States v. United States Coin & Currency, 401 U. S. 715 [1971].)
I can only ask the questions — the lawmakers must answer them.
As Aristotle said ‘ ‘ ‘ Equity bids us be merciful to the weakness of human nature; to think less about the laws than about the man who framed them’”. (Confronting Injustice: The Edmond Cahn Reader. Little, Brown & Co. 1966, p. 239.)
The motion to set aside the verdict is denied.