Alfred H. Kleiman, J.
Numerous defendants were arrested in a series of raids in Chinatown, carried out by police officers armed with search warrants.
The amended informations charge the defendants with the crimes of promoting gambling and possession of gambling devices in violations of sections 225.05 and 225.30 of the Penal Law, in that each defendant acted as a "Dealer,” "Cutter,” "Manager/Moneyman” or "Security”; listing the gambling activities as "Poker,” "Fantan” and "Dominoes.”
In these omnibus motions the defendants move to dismiss the accusatory instruments upon the grounds (1) the specified gambling statutes are unconstitutional, and (2) the "People are guilty of selective and discriminatory prosecution.” In the alternative the defendants move for (a) a preliminary hearing pursuant to CPL 170.75, and (b) the suppression of the evidence seized.
CONSTITUTIONALITY OF THE GAMBLING STATUTES
The defendants contend the statutes are constitutionally void for vagueness.
Section 225.05 of the Penal Law provides: "A person is guilty of promoting gambling in the second degree when he knowingly advances or profits from unlawful gambling activity.”
Section 225.30 provides: "A person is guilty of possession of a gambling device when, with knowledge of the character thereof, he * * * places or possesses, 1. A slot machine; or 2. Any other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity.”
Subdivision 4 of section 225.00 defines "Advance gambling activity” as "A person 'advances gambling activity’ when, acting other than as a player, he engages in conduct which materially aids any form of gambling activity. Such conduct includes but is not limited to conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its *464 financial or recording phases, or toward any other phase of its operation. One advances gambling activity when, having substantial proprietary or other authoritative control over premises being used with his knowledge for purposes of gambling activity, he permits such to occur or continue or makes no effort to prevent its occurrence or continuation.” (Emphasis mine.)
The defendants argue that the above statutory definition of advancing gambling activity is void for vagueness in two respects.
First they argue that the term "materially aids” is not further defined and is therefore unconstitutionally vague. The word obviously has its everyday meaning. Webster’s New Word Dictionary’s (Second Coll, ed, 1970) relevant definition of the word "materially” is "to a great extent; substantially; considerably.”
As I stated in People v Newton (73 Misc 2d 854, 856): "The doctrine of 'vagueness’ does not mean that the fact that the Penal Law has not specifically defined a key word in the statute, it becomes constitutionally defective. A lack of precision in statutory language does not automatically mean that the requirements of due process have been offended (Roth v United States, 354 US 476, 491-492 [1957]). While the Constitution requires that criminal statutes define the conduct to be punished, the Constitution does not require impossible standards. (United States v Petrillo, 332 US 1 [1947].) As our Supreme Court recently said 'The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.’ (Colten v Kentucky, 407 US 104, 110 [1972]).”
Bearing in mind the well-established principle that there is a strong presumption of constitutionality of a legislative enactment (People v Pagnotta, 25 NY2d 333, 337) this court is satisfied that the use of the language "materially aids” is not unconstitutionally vague.
Secondly, the defendants argue in their motion papers that the conduct penalized "is likewise not identified, because the Legislature in exemplifying such conduct, states the examples and then states before, 'includes but is not limited’ to the *465 examples later given in the statute.” Each defendant is charged in the information with being a “dealer,” “cutter,” “moneyman/manager” or “security.” The Assistant District Attorney further defines a cutter as “one who cuts the house winnings after each hand or round is played” and a “money-man/ manager” as “one who takes the house winnings from each table.” In the “examples” given in the statute (CPL 225.00, subd 4) are "conduct directed toward * * * maintenance of premises * * * toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.” Clearly a "dealer,” "cutter,” "moneyman/manager,” or security personnel would fall within the above specific language of the statute, and therefore as to any such persons the statute gives fair notice of the contemplated conduct forbidden by the law (United States v Harriss, 347 US 612, 617). The argument that the statutory language "includes but is not limited to [the prescribed] conduct,” is vague, need not be considered by this court. As the United States Supreme Court has said "one to. whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional” (United States v Raines, 362 US 17, 21). Certainly as to these defendants the statute gives fair notice of forbidden conduct.
The power of the State to prohibit gambling has long been recognized (People v Wolosky, 296 NY 236; People v Adams, 176 NY 351, affd Adams v New York, 192 US 585). While I have heretofore questioned the usefulness of a gambling statute (People v Forlano, 67 Misc 2d 996, 999) our highest court recently said (in passing on an ordinance regulating pinball machines), “It would not matter whether the courts thought the legislation unwise, or that its purpose could better be achieved in another way, or that the method chosen was ineffective” (Matter of Albert Simon, Inc. v Meyerson, 36 NY2d 300, 303). “The prohibition and regulation of gambling in all forms * * * are unquestionably valid exercises of legislative power” (People ex rel. Ellison v Lavin, 179 NY 164, 168).
Accordingly, the motions to dismiss the informations upon the ground that sections 225.05 and 225.30 of the Penal Law are unconstitutional, are denied.
*466 DISCRIMINATORY PROSECUTION
The motions to dismiss the informations upon the grounds that the People are guilty of selective and discriminatory prosecution is denied.
The defendants argue that they “have reason to believe that they are being unduly harassed because of their heritage.” To invoke the defense of discriminatory prosecution one must prove that the selection of the defendants for prosecution was deliberately based on their race or religion (United States v Steele, 461 F2d 1148, 1151). “The presumption is always that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice” (United States v Falk, 479 F2d 616, 620). It is not enough to allege intentional and purposeful discrimination, but the defense must "present facts sufficient to raise a reasonable doubt about the prosecutor’s purpose” (emphasis added) (United States v Falk, supra, p 620). The only facts alleged are that five or more groups of Asiatic-Americans were charged with violating the gambling statutes in a three-month period and that “defendants have reason to believe that there have not been that same number of prosecutions for these crimes in the whole Borough of Manhattan.” No evidentiary facts have been submitted in support of this “reason to believe,” and even if it were true, no evidence from which to conclude that such prosecutions were deliberately discriminatory. Mere selectivity in prosecution, in and of itself, creates no constitutional problem (Oyler v Boles, 368 US 448). “Upon the meagre preliminary showing made here” (United States v Berrios, 501 F2d 1207, 1211) this court will not order a hearing, and these motions are accordingly denied.
RIGHT OF DEFENDANTS TO PRELIMINARY HEARING
The defendants request preliminary hearings despite the language of CPL 170.75, specifically excluding persons charged with gambling offenses from a right to same.
CPL 170.75 (subd 1), inter alia, provides as follows: “A defendant who has been arraigned in the New York criminal court upon an information * * * which charges a misdemeanor other than one deñned in article two hundred twenty-live of the penal law or in the multiple dwelling law, may, before entry of a plea of guilty or commencement of trial, *467 request a hearing to determine whether there is reasonable cause to believe that he committed such misdemeanor.” (Emphasis added.)
The defendants contend that the statutory denial of a preliminary hearing violates the Fourth and Fourteenth Amendments of the United States Constitution.
In Gerstein v Pugh (420 US 103), the United States Supreme Court held that the Constitution does not require an adversary determination of probable cause. The court held that the Fourth Amendment only requires a state to "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty” (Gerstein, supra, p 125). The defendants having all been released on their own recognizance, they are not subject to any significant restraint of their liberty and therefore are not constitutionally entitled to even the limited Fourth Amendment judicial determination provided for in the Gerstein decision.
While it is now clear that the defendants do not have the right to a preliminary adversary hearing under the Fourth Amendment, is the denial of such a right a violation of the equal protection clauses of the United States and New York State Constitutions (US Const., 14th Arndt, § 1; NY Const, art I, § 11)? The State having granted such a right to practically all defendants charged with misdemeanors, are the statutory exceptions of those charged with violating gambling laws a violation of the equal protection clauses?
The court has approached the issue before it, bearing in mind the strong presumption that a duly enacted statute is constitutional (People v Pagnotta, 25 NY2d 333, 337, supra), and that any invalidity of the law must be demonstrated beyond a reasonable doubt (Matter of Van Berkel v Power, 16 NY2d 37, 40).
What are the tests to be employed in determining whether these defendants are being denied the equal protection of the law?
The New York Court of Appeals recently discussed the applicable tests to be employed. In Matter of Malpica-Orsini (36 NY2d 568), the court said: "In measuring [the] claim of a denial of equal protection, it is necessary to consider various standards of review. It has been observed that there is hardly a law on the books that does not affect some people differently from others (see San Antonio Independent School Dist. v *468 Rodriguez, 411 US 1, 60 [concurring opn]). Under traditional analysis, the equal protection clause does not deny to States the power to treat different classes of persons in different ways, but a classiñcation must be reasonable, not arbitrary, and have a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike (Reed v Reed, 404 US 71, 75-76; Neale v Hayduk, 35 NY2d 182, 186). A State does not violate the guarantee merely because the classifications made by its laws are imperfect (Dandridge v Williams, 397 US 471, 485), and a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it (McGowan v Maryland, 366 US 420, 426; Matter of Dorn 'HH’ v Lawrence 'II’, 31 NY2d 154, 158).” (Emphasis mine.)
The court cited Weber v Aetna Cas. & Sur. Co. (406 US 164, 172), in which the United States Supreme Court stated: "The tests to determine the validity of state statutes under the Equal Protection Clause have been variously expressed, but this Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose.” The classification must rest upon some ground of difference which has a "fair and substantial relation to the object of the legislation” (Royster Guano Co. v Virginia, 253 US 412, 415). And the burden of showing that the classification does not rest upon any reasonable basis is on the defendants (Lindsley v Natural Carbonic Gas Co., 220 US 61, 78). (See, generally, Legislative Purpose, Rationality and Equal Protection, 82 Yale LJ 123.)
The principal purpose of CPL 170.75 is clear. It grants the right of a defendant to an early hearing by the court to. determine if there is reasonable cause to believe that a crime has been committed by the defendant (see CPL 70.10, subd 2). It follows therefrom, that upon a finding of no reasonable cause the case is dismissed. While there are those who find the law an "anachronism” (Professor Richard G. Denzer in his commentary [McKinney’s Cons. Laws of N. Y., Book 11 A, CPL 170.75]; Judge M. Marvin Berger in his learned opinion, People v McClafferty [73 Misc 2d 666, 677]), and having no rational basis (see Improving New York’s New Criminal Procedure Law, 45 St. John’s L Rev 387, 421) and others have urged, its retention (see Special Report of the Proposed CPL [1969 draft] prepared by Committee on Criminal Courts, Law and Procedure of the Association of Bar of the City of New *469 York) its validity has not been questioned. "The clear legislative intent appears to have been to afford a defendant the benefit of scrutiny of the charges * * * by the Criminal Court * * * measured by the standard of reasonable cause” (People v McClafferty, supra, p 669; see People ex rel Pierce v Thomas, 70 Misc 2d 629, 630; see, generally, Function of the Preliminary Hearing in Federal Pretrial Procedure, 83 Yale LJ 771).
This right to a preliminary hearing, once having been granted by the Legislature, it has been identified by the United States Supreme Court as such a "critical stage” in the prosecution as to require appointed counsel (Coleman v Alabama, 399 US 1). Not only was it determined to be critical because a finding of no probable (or reasonable) cause meant that the defendant would not be tried, but since "Alabama allowed the suspect to confront and cross-examine prosecution witnesses [as does New York under CPL 170.75] the suspect’s defense on the merits could be compromised if he had no legal assistance for exploring or preserving the witnesses’ testimony” (Gerstein v Pugh, 420 US 103, 123, supra). The right to an early determination that reasonable cause exists, which includes the concomitant right to confront and cross-examine witnesses and the preservation of their testimony, is certainly a substantial right, even if not constitutionally required. It follows therefrom, that this right or benefit cannot be denied to any class of defendants unless there is a rational basis for same (see Rinaldi v Yeager, 384 US 305).
What argument is or can be made that there is a rational basis for this statutory classification that exempts alleged gamblers from the right to a preliminary hearing? "When the classification * * * is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed” (Lindsley v Natural Carbonic Gas Co., 220 US 61, 78, supra). "There is a further presumption that the Legislature has investigated and found facts necessary to support the legislation” (Matter of Malpica-Orsini, 36 NY2d 568, 571, supra).
CPL 170.75 was derived from section 40 of the New York City Criminal Courts Act (which section was repealed in 1971 [L 1971, ch 893, § 2]). The New York Criminal Courts Act was enacted in 1910. Prior to 1960 all defendants charged with misdemeanors were entitled to either a trial before a Magis *470 trate or at defendant’s option to a trial in the Court of Special Sessions. In 1960 the act was amended to vest exclusive jurisdiction in the Magistrates’ Courts of all misdemeanor gambling cases (NYC Crim Ct Act, §§ 31, 102-a, as amd by L 1960, ch 466, §§ 2, 3). The reason given was so that "the Court of Special Sessions will be able to devote its attention to more important matters, such as crimes of violence” (Memoranda of City of New York 1960, NY Legis Ann, 1960, p 18). In 1962, when the Magistrate’s Court was merged with the Court of Special Sessions to form the New York City Criminal Court, this limiting provision as to defendants charged with gambling offenses was carried into section 40 of the New York City Criminal Courts Act. (A similar limitation was subsequently added as to violations of the Multiple Dwelling Law [L 1965, ch 490, § 1].) Thus in 1965 section 40 read as follows:
"§ 40. Mode of trial
"All trials in the court shall be without a jury. All trials in the court shall be held before a single judge; provided, however, that where the defendant has been charged with a misdemeanor, other than a charge of misdemeanor under article eighty-eight of the penal law, entitled 'gambling, ’ or other than a charge of misdemeanor under the provisions of the multiple dwelling law, the procedure following arraignment shall be as follows:
"(1) The defendant shall be advised that he has the right to a trial in a part of the court held by a panel of three of the judges thereof;
"(2) The defendant may at any time before the court hears any testimony upon the trial demand to be tried in such part, or the district attorney or the legal representative of a department of the state or city in charge of the prosecution, at any time before the court hears any witness to give evidence upon the trial, may demand that the trial be held in such part, or the court may, on its own motion, before any witness is heard to give evidence upon the trial, direct that the trial be held in such part; in any such instance the judge shall sit as a magistrate, and if the defendant shall not waive examination, shall proceed to examine the case, and as the evidence warrants, either discharge the defendant or hold the defendant to answer for trial in such part. ” (Emphasis added.)
When section 40 of the New York City Criminal Court Act was amended in 1965 (L 1965, ch 490, § 1), it was accompanied by a "Memorandum of Legislative Representatives of the City *471 of New York” (NY Legis Ann, 1965, p 332). It states the reasoning behind the multiple dwelling misdemeanors being excluded from the provisions of section 40. This memorandum states, inter alia:
"The object of this bill is to amend section 40 of the New York City Criminal Court Act to confer exclusive jurisdiction upon, a single judge of the New York City Criminal Court to hear and determine any misdemeanor charge under the Multiple Dwelling Law.
"This proposed amendment is designed to expedite the disposition of misdemeanor charges involving violations of the Multiple Dwelling Law.
"At present, when a person is brought before the New York City Criminal Court and charged with a violation of the Multiple Dwelling Law constituting a misdemeanor, he has the right to demand a trial before a three judge panel of that court. He may ñrst demand a preliminary hearing before a single judge.

"This procedure burdens the crowded calendars of the three judge panels and encumbers the single judge parts with preliminary hearings. The effect of these protracted proceedings is to delay the correction of the violations.

"This amendment would confer upon the single judge court jurisdiction to try and dispose of all such prosecutions, thus facilitating expeditious disposition of such cases.

"A small percentage of our Multiple Dwelling prosecutions are now tried in the three judge panels of the New York City Criminal Court, and experience has proven that such percentage contains the hard core of chronic violators who avail themselves of every opportunity to avoid compliance with the requirements of the law. For such reason, it is imperative that the law be amended to preclude such use for purpose of evasion. There is no reason why a three bench panel would resolve the charges more fairly than a single judge.” (Emphasis added).
Assuming the constitutionality of section 40 as amended, (cf. People v Peck, 7 NY2d 76), it could well have been argued that the rationale for the classification exempting those charged with gambling (or multiple dwelling offenses) was that since jurisdiction over such trials was limited to "the single judge court,” the holding of a preliminary hearing before the same forum would burden the court unnecessarily. *472 However, such argument must fail as this historical setting no longer exists.
Since Baldwin v New York (399 US 66), all defendants charged with Class A misdemeanors, including those accused of gambling offenses, are entitled to a trial by jury. Thus the termination of the jurisdictional differences also forcloses this argument of rationality. It is to be noted that the jurisdictional distinctions were not incorporated when the Criminal Procedure Law was enacted (eff. Sept 1, 1971).
Another argument of rationality is that granting preliminary hearings in the alleged large volume of gambling cases will further encumber this overburdened court. Saving money and time are legitimate governmental interests. However, " 'the Constitution recognizes higher values than speed and efficiency.’ ” (Frontiero v Richardson, 411 US 677, 690) and "a State may not protect the public fisc by drawing an invidious distinction between classes of its citizens”. (Memorial Hosp. v Maricopa County, 415 US 250, 263; see, also, Rinaldi v Yeager, 384 US 305, 310, supra, and Reed v Reed, 404 US 71, 76.)
There are as many, if not more defendants accused of other nonviolent crimes such as violations of the Health Code, Sabbath Laws (General Business Law) and prostitution, all of whom are entitled to a preliminary hearing. The exclusion of alleged gamblers from this same right is, if not arbitrary, at least not reasonable.
The District Attorney submits that if the court takes judicial notice of the fact that these cases seldom result in incarceration in New York City, and that the usual disposition is a conditional discharge or fine, the rationale test is met. The court has taken judicial notice of these factors (People v Forlano, 67 Misc 2d 996, 999, supra). The court has also taken judicial notice of the fact that violations of most of the other nonviolent crimes mentioned above result in similar dispositions. To ask the court to assume that these factors were considered by the Legislature as a rationale for the classification under review is without foundation. The court has "no right to conjure up possible situations which might justify the discrimination.” (Mayflower Farms v Ten Eyck, 297 US 266, 274.) In any event, I think that a particular exercise of judicial discretion in sentencing is too uncertain and ephemeral a distinction upon which to deny significant benefits in order to save judicial time and expense.
*473 In the opinion of this court, all persons accused of misdemeanors, regardless of type, volume or punishment imposed, are similarly situated with respect to the primary statutory objective of CPL 170.75. Whatever differences do exist between gambling crimes and other crimes, they are not reasonably related to the purposes of this act. (See Morey v Doud, 354 US 457, 465; McLaughlin v Florida, 379 US 184, 191; see, generally, Developments in the Law — Equal Protection, 82 Harv L Rev 1065; Equal Protection of the Laws, 37 Cal L Rev 341, 346.)
I find that the classification in issue does not meet the minimum standards of Weber v Aetna Cas. & Sur. Co. (406 US 164, supra). It is neither reasonable, nor does it bear any rational relationship to the purpose and object of the legislation. "Both equal protection and due process emphasize the central aim of our entire judicial system — all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.’ Chambers v Florida, 309 US 227, 241.” (Griffin v Illinois, 351 US 12, 17.) As long as competing with the State and city in their gambling activities are criminal offenses, the least the court can do is assure those accused of such crimes the equal protection of the laws.
I am therefore constrained to hold that that part of CPL 170.75 which excludes from a right to a hearing those charged with violating article 225 of the Penal Law is unconstitutional, as violative of the equal protection clauses.
The motions for preliminary hearings are accordingly granted.
SUFFICIENCY OF THE WARRANTS
In light of the recent Court of Appeals decision, People v Nieves (36 NY2d 396), the issue is raised as to whether the search warrants and the accompanying affidavits are too indefinite regarding the phrase "any other person present” in the warrants.
The search warrants and affidavits issued in this case do comply with the standards of the Nieves decision.
The affidavits contain sufficient information to establish that probable cause did exist to believe that illegal gambling was occurring on the premises outlined in the affidavits and search warrants. The affidavits delineated in detail the charac *474 ter of the premises, its location, size, areas to be searched, means of access, neighborhood, and other relevant factors.
It is apparent from a reading of the affidavits that the necessity for the search was considered. Specific descriptions were given as to those who were to be searched, based on prior visits to the premises by undercover policemen.
The location of the premises, the descriptions, and the type of activity alleged to have been observed clearly reduced any risk that an innocent person would be swept up in a gambling raid of any of the four places in question.
From reading the various affidavits, including the description of the area to be raided, there was assurance that the search was to be confined to criminal activity. Therefore, since the elements of Nieves have been complied with, CPL 690.15 (subd 2), authorizing searches of "any person present thereat or therein” may be applied in this instance.
The defendants further urge a hearing to determine the truthfulness of the affidavits upon which the search warrants were issued. CPL 710.60 (subd 1) provides that the motion papers "must contain sworn allegations of fact. * * * Such allegations may be based upon * * * information and belief, provided that in the latter event the sources of such information and the grounds of such belief are stated.” While the court may permit an inquiry as to whether the affidavit’s statements were perjurious (People v Alfinito, 16 NY2d 181, 186; see People v Irizarry, 64 Misc 2d 49, 52), a hearing will not be granted where the allegations of fact are not supported as required by the Criminal Procedure Law.
Accordingly, pursuant to CPL 710.60 (subd 3), the motions to suppress the seized articles are denied.