OPINION OF THE COURT
Donald J. Mark, J.
Defendant Jeffrey Melton, who stands charged with criminal possession of a controlled substance in the third degree *650 and criminal possession of a controlled substance in the seventh degree, has moved this court, pursuant to CPL 710.20 (1) and (3), for suppression of cocaine seized from him and suppression of his written statement admitting possession of cocaine. Following a combination hearing, the court reserved decision.
The facts established at this hearing are as follows:
On July 24, 1990, Rochester Police Officer Joao Nobrega responded to a dispatch of undescribed individuals loitering and playing dice on the north side of a building at 229 Remmington Street in the City of Rochester. Officer Nobrega arrived at the scene at about 5:50 p.m., and observed a group of five male blacks in a circle playing dice; he also observed money on the ground inside the circle. Nobrega approached the group for purposes of investigating a "loitering for the purpose of gambling” charge, that charge being classified as a violation (Penal Law § 240.35 [2]). Upon his approach, the individuals picked up the money from the ground and pocketed it. Nobrega did not observe any weapons or other contraband at the time, and none of the five individuals in the group attempted to flee.
Officer Nobrega at this point asked defendant what he was doing, to which defendant replied that he was just "hanging out.” The officer testified that he spoke to defendant as opposed to the others in the group by random chance only; he could not tell who had thrown the dice, nor did he remember seeing defendant either with money or with his hands in his pockets. Nobrega next asked defendant if he had any sharp objects or weapons in his pockets, receiving a negative reply, and then asked defendant if he could search his pockets. Defendant agreed to this search by a "yes” answer, and Nobrega patted him down and searched his right front pants pocket. There he found a large plastic bag containing six smaller plastic bags; these six bags contained a white powder which the officer assumed was cocaine. Defendant was then placed under arrest and transported to the section office where he ultimately made a written confession to these charges.
A pat-down search was conducted of each of the other individuals in the group, but no others were either arrested or charged with this loitering offense.
Defendant now claims that this arrest was illegal, putting in issue the legitimacy of Officer Nobrega’s conduct in approaching the group and searching defendant’s person.
*651 The officer’s initial approach of these five individuals was based on the dispatch of persons playing dice, and on his own observations upon arrival at the scene of these five male blacks gathered in a circle, obviously gambling. Because of the existence of the statute prohibiting loitering for the purpose of gambling, these personal observations alone provided probable cause to arrest for this offense, so that his conduct in approaching defendant and searching him for weapons would appear to be entirely proper (People v King, 102 AD2d 710, affd, 65 NY2d 702).
However, the constitutionality of this loitering statute is questionable.
Section 240.35 (2) provides as follows:
"A person is guilty of loitering when he * * *
"Loiters or remains in a public place for the purpose of gambling with cards, dice or other gambling paraphernalia”.
Throwing dice is gambling (see, People ex rel. Ellison v Lavin, 179 NY 164), but participating in gambling of this nature as a casual player is not a crime (Penal Law § 225.00 [4]; see, People ex rel. Guido v Calkins, 9 NY2d 77; Watts v Malatesta, 262 NY 80; People v Cea, 141 Misc 2d 234). The only gambling activities which are prohibited are promoting gambling (Penal Law §§ 225.05, 225.10), possession of gambling records (Penal Law §§ 225.15, 225.20) and possession of a gambling device (Penal Law § 225.30). The section involved here obviously does not interdict these types of conduct.
In this respect this statute can be compared analytically with Penal Law § 240.35 (3), which prohibited loitering for the purpose of engaging in deviate sexual intercourse. The Court of Appeals found in People v Onofre (51 NY2d 476, cert denied 451 US 987) that consensual deviate sexual intercourse between adults did not constitute criminal behavior, so it concluded in People v Uplinger (58 NY2d 936, cert dismissed 467 US 246) that loitering for that purpose likewise could not constitute criminal behavior. Consequently, that court declared that statute to be unconstitutional.
Similarly, since the purpose of section 240.35 (2) is to punish conduct anticipatory of or attendant to lawful gambling activity, such statute must necessarily be of doubtful validity.
While there is a strong presumption that a statute is constitutional (People v Pagnotta, 25 NY2d 333) and its invalidity must be demonstrated beyond a reasonable doubt (Matter of Van Berkel v Power, 16 NY2d 37), the resolution of the *652 issue raised by the defendant does not depend upon the constitutionality of that section.[1]
The law is clear that where a defendant is arrested on the basis of a loitering statute which is unconstitutional, any search incident to such arrest is improper and any items seized as a result must be suppressed (People v Peterkin, 48 AD2d 843; People v Beltrand, 63 Misc 2d 1041, affd 67 Misc 2d 324). In Peterkin, the defendant was arrested for loitering in violation of Penal Law § 240.35 (6) and a search uncovered money stolen during a robbery. That loitering section was subsequently found to be unconstitutional in People v Berck (32 NY2d 567, cert denied 414 US 1093) and as a consequence the search which was incident to the arrest was illegal. The fact pattern in Beltrand was almost identical to that in Peterkin and the result was the same.
If the statute involved here is in fact unconstitutional, it does not matter that its unconstitutionality was determined after the defendant’s arrest (see, People v Peterkin, supra), or that Officer Nobrega relied on the statute in good faith (see, People v Bigelow, 66 NY2d 417; People v Lent, 92 AD2d 941).
But here Officer Nobrega did not arrest the defendant for the violation of a probably unconstitutional statute; he instead approached the defendant and the rest of the group on the basis of a probably unconstitutional statute. This distinction is pivotal.
The United States Supreme Court in Florida v Royer (460 US 491) held that the police do not violate the Fourth Amendment by merely approaching an individual on the street, by asking him if he is willing to answer questions, by questioning him if he is willing to listen or by offering into evidence his voluntary responses. The principle espoused by that case has apparently been rejected by the Court of Appeals in People v Johnson (64 NY2d 617).[2] There, the majority opinion concluded that a stop based upon nothing more than the fact that the defendant had previously been arrested for burglary and that there had been burglaries in the area did not establish a reasonable suspicion[3] that he was engaged in or about to *653 engage in criminal conduct, and further held that the information and evidence subsequently acquired, albeit voluntarily, should have been suppressed.
The case of People v Edmund (169 AD2d 195), recently decided by the Appellate Division, Fourth Department, while citing Royer (supra) with approval and never alluding to Johnson (supra), nevertheless recognized that there exists a distinction between the type of street encounter Federal judicial authority will countenance and that which State judicial authority will sanction.
The Court of Appeals in People v De Bour (40 NY2d 210) outlined a four-part scale by which to measure the propriety of a street confrontation between a police officer and an individual. The first level[4] 5permits a police officer to approach an individual for the purpose of requesting information when there is some objective credible reason[5] for that interference not necessarily indicative of criminal activity (e.g., People v Jones, 69 NY2d 853) but which could involve suspected criminal activity (e.g., People v Pizzo, 144 AD2d 930). This first level is the one implicated here.
Thus, the issue becomes whether an approach premised on a probably unconstitutional statute can be equated with an approach premised on an articulable reason.
As has been indicated, People v Uplinger (supra) concluded that the statute prohibiting loitering for the purpose of engaging in deviate sexual intercourse between consenting adults was legally impermissible. In the event a concerned citizen reported to the police that he or she observed a male and female engaging in sodomy, a police officer would certainly be remiss in his duty were he to immediately assume that the couple was simply involved in conduct encompassed in an unconstitutional statute. That officer would and should investigate whether the female was being forced (sodomy, first degree in violation of Penal Law § 130.50 [1]), underage (sodomy, third degree in violation of Penal Law § 130.40 [2]), or a prostitute (prostitution in violation of Penal Law § 230.00). An approach under such circumstances would come under the auspice of an articulable reason.
*654 In like manner, Officer Nobrega, were he sufficiently legally sophisticated to prognosticate that section 240.35 (2) would ultimately be declared unconstitutional, was still not precluded from responding to a radio dispatch that individuals were loitering and playing dice. The officer should have been able to approach the group to determine if the crime of promoting gambling in violation of Penal Law § 225.05 was being perpetrated, for example, by one of the group accepting a wager on a commercial basis and not as a casual player (see, People v Cea, 141 Misc 2d 234, supra), by an individual collecting winnings for an operator after each round of play (People v Shing, 83 Misc 2d 462) or by one individual receiving a percentage of the money bet by the players (People v Marconi, 27 Misc 2d 348). He should also have been able to approach the group to determine if the crime of possession of a gambling device in violation of Penal Law § 225.30 (2) was being perpetrated, for example, by an individual possessing dice believing the same would be used to advance unlawful gambling activity (see, People v King, 102 AD2d 710, affd 65 NY2d 702, supra).
The examples illustrate that Officer Nobrega possessed an articulable reason for approaching the defendant and the other involved individuals and requesting information from the defendant, and it is immaterial that the officer predicated his approach upon his assumption that he was investigating a violation of a probably unconstitutional loitering statute (see, People v King, supra).
The factual structure here is somewhat analogous to that in People v Edmund (169 AD2d 195, supra). There the appellate court found that the extant circumstances constituted an objective credible reason for the approach of the defendant. The police officer thereafter asked the defendant if he would mind if the officer looked through the defendant’s overnight bag, and the defendant told him to go ahead. The defendant’s address book thereby recovered and his subsequent statement to the police were ruled admissible. The colloquy between the police officer and the defendant in that case is equivalent to the colloquy in this case in which the police officer asked the defendant if he could search the defendant’s pockets and the defendant responded "yes.” Thus, there can be no claim that *655 the defendant’s consent was involuntary (see, People v Meredith, 49 NY2d 1038).
Accordingly, the application of the defendant to suppress the cocaine seized from him and the statement made by him is denied.

. For this reason the Attorney-General was not notified that he could intervene in this proceeding pursuant to CPLR 1012 (b).

. This is inferred because the dissent relied upon this case to support his position that a police-initiated inquiry need not be justified on founded suspicion (see, n 4, infra).

. The People argued that the stop was justified by reasonable suspicion; they never advanced the theory of articulable reason (see, n 5, infra).

. The remaining three levels are founded suspicion (e.g., People v Meredith, 49 NY2d 1038), reasonable suspicion (e.g., People v Leung, 68 NY2d 734) and probable cause (e.g., People v McRay, 51 NY2d 594), all of which authorize escalating degrees of police intervention.

. The term "objective credible reason” is equated with the term "articulable reason” (see, People v Holman, 90 AD2d 746).